NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0498n.06

No. 10-2583

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 15, 2012*

LEONARD GREEN, Clerk

COLLEEN MALONEY,                                    )
                                                    )
    Plaintiff-Appellant,                           )        ON APPEAL FROM THE
                                                    )        UNITED STATES DISTRICT
    v.                                             )        COURT FOR THE EASTERN
                                                    )        DISTRICT OF MICHIGAN
COMMISSIONER OF SOCIAL SECURITY,                    )
                                                    )
    Defendant-Appellee.                            )
                                                    )

BEFORE: MERRITT and ROGERS, Circuit Judges, and POLSTER, District Judge.[*]

ROGERS, Circuit Judge. Colleen Maloney, a woman who suffers from schizophrenia, appeals the denial of her application for Social Security disability benefits. After a full administrative hearing, an ALJ denied Maloney's application. In doing so, the ALJ discounted the opinion of Maloney's treating physician, and excluded the lay witness testimony of Maloney's sister-in-law. The Appeals Council of the Social Security Administration denied Maloney's administrative appeal, and the district court affirmed. This was proper because the treating physician's opinion conflicted with the overwhelming record evidence, and Maloney waived the lay witness issue.

**I.**

Maloney, a diagnosed schizophrenic, filed this disability claim alleging that she became unable to work on August 8, 2003. The magistrate judge summarized the record evidence:

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

A review of the record evidence indicates that Plaintiff was treated at Catholic Services of Macomb for mental health issues from 2001-04. In 2004, R. Hasan, M.D., diagnosed Plaintiff with schizophrenia, paranoid type in partial remission at Axis I, deferred on Axis II, bladder problem[s] and acid reflux disease on Axis III, moderate on Axis IV and a GAF score of 50 to 55 on Axis V. Her prognosis was fair with treatment.[1]

In 2004, a Psychiatric Review Technique indicated that Plaintiff has schizophrenic, paranoid, or other psychotic disorder (12.03) which moderately limit her ability to maintain social functioning and maintain concentration, persistence and pace, and which mildly restricts her activities of daily functioning. A Residual Functional Capacity (RFC) Assessment completed at the same time concluded that Plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremities, and in the ability to set realistic goals or make plans independently of others.

Plaintiff was also treated at the Evergreen Counseling Centers from late 2004 through in 2005. In March of 2005, Plaintiff was not hearing voices but she did have some tangential thinking with mild paranoia and was struggling with past compulsive buying and thoughts of an imaginary relationship with a man she met on a cruise ship. Throughout 2005, her counselors noted that Plaintiff was looking for a job, was hopeful that she would get job training or a job, and the counselors were supporting her in that search and were helping her make more structured use of her leisure time.

In 2005, another Psychiatric Review Technique indicated that Plaintiff has affective disorders (12.04) and personality disorders (12.08) which moderately limit her ability to maintain concentration, persistence or pace and which mildly restrict her activities of daily living and ability to maintain social functioning. An RFC Assessment completed at the same time found Plaintiff moderately limited in the

---

[1] "The [Global Assessment of Functioning] GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

ability to carry out detailed instructions, the ability to interact appropriately with the general public, and the ability to set realistic goals or make plans independently of others. It was also noted that although Plaintiff has been on psychotropic medication since 1968, "currently [she] is alert, coherent, relevant, cooperative, no evidence of thought disorder."

Plaintiff also sought counseling at Advanced Counseling Services, P.C. in St. Clair Shores, Michigan, from 2006-07. In November of 2007, A.L. Hughett, M.D., noted that "[i]t is difficult to make a diagnosis. She has been hospitalized before with extensive depression. Her judgement has been poor in the past." Dr. Hughett found that Plaintiff had several serious limitations and estimated that Plaintiff's impairments would cause her to be absent form work about two days per month.

In her daily activity report, it was reported that Plaintiff watches television, goes to church, has no problems with personal care and hygiene, prepares her own meals, vacuums, dusts, washes mirrors and dishes, goes outside twice a day, walks, drives and rides in a car, is able to go out alone, shops in stores, shops by mail, is able to pay bills and handle personal finances.

Plaintiff testified that she does housework, attends church, drives herself, watches television, visits with friends, grocery shops on her own, takes care of her own personal needs.

Plaintiff testified that she can sit for a couple or three hours, and can stand for about three hours, can walk for a quarter or half a mile, and can manipulate her arms and fingers. Plaintiff further testified that she can lift around 10 pounds, and can carry between 10 and 20 pounds, that she has difficulty bending but does not have any trouble pushing or pulling. Plaintiff also testified that she does not have any trouble understanding detailed instructions, nor does she have any trouble concentrating but she does have difficulty maintaining attention. Plaintiff also indicated that she wears hearing aids, has around 20% hearing ability, does not tolerate dust or chemicals well, can climb stairs but is afraid of ladders, can kneel on the church kneeler but cannot get up from the floor, does not have any trouble squatting but has trouble crawling. Plaintiff testified that she has not been hospitalized lately.

Plaintiff testified that she believes she was terminated form her job of thirty years because she had not kept up with the production standards and because her supervisors were "very negative, and they wanted to get rid of me." Plaintiff testified that she does better if allowed to work at her own pace.

Plaintiff also testified that she gets up around 9:00 to go to work part-time, i.e., 20 hours per week, for the Detroit Urban League's family community center. Plaintiff works as a clerical receptionist there and does not have to do any typing; rather, she greets people, shows them where they are to go, escorts them, and passes out emergency groceries. She stated that she does not have any problems relating with people on the job. When the Vocational Expert ("VE") asked Plaintiff if she could come into work for eight hours a day, five days a week, she responded that she could and when further asked whether she would have any problems doing that, Plaintiff responded, "No, I wouldn't have any problems."

The VE testified that Plaintiff could return to her prior work or that she maintains the RFC to perform other sedentary, semi-skilled jobs such as data entry, receptionist, order clerk, and scheduler jobs that are available in the amount of approximately 6,500 in the Detroit area and double that number in the state. The VE further testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT).

R. 21, Report and Recommendation, at 7-10 (internal citations omitted).

The ALJ denied Maloney's application because Maloney did not have a cognizable disability under the Commissioner's five-step disability analysis. The ALJ found that Maloney passed step one because she had not engaged in substantial gainful activity since the alleged onset date of her disability. The ALJ found that Maloney also passed step two because she had several severe impairments: schizoaffective disorder, anxiety disorder and depression. However, Maloney did not pass step three because there was no evidence that her impairments met or equaled one of the recognized impairments set forth by regulation. Further, the ALJ found Maloney failed step four because she had the residual functional capacity to perform her past relevant work as a claims collection and support clerk. Finally, the ALJ found that Maloney failed step five because she had the residual functional capacity to perform jobs involving semi-skilled work. The Appeals Council denied Maloney's administrative appeal.

Maloney sought review by the district court. She argued that the ALJ erroneously refused to allow JoAnn Bolek, Maloney's sister-in-law, to testify at the hearing. The district court held that Maloney had waived this argument by failing to raise it to either the ALJ or the Appeals Council. *Maloney v. Comm'r of Soc. Sec.*, No. 09-13867, 2010 WL 3941284, at *2 (E.D. Mich. Oct. 6, 2010). Alternatively, the district court held that Bolek's testimony was unnecessary because the ALJ had already heard substantial evidence about Maloney's condition. *Id.* The district court also found that the ALJ had properly discounted the opinion of Maloney's treating physician because the opinion was inconsistent with other medical evidence and Maloney's own testimony. *Id.* at *4-5. The district court granted judgment for the Commissioner and Maloney appeals.

## II.

Maloney argues that the ALJ ignored the opinion of her treating physician and erroneously excluded Bolek from testifying. As explained below, Maloney's arguments are not well founded.

### 1. Treating Physician

The ALJ properly rejected the opinion of Maloney's treating physician, Dr. Hughett. An ALJ gives "controlling weight" to a treating physician's opinion if the opinion "is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d), (d)(2). The ALJ must provide "good reasons" should he decide the treating physician's opinion deserves less than controlling weight. *Id*. Here, the ALJ provided good reasons for rejecting the testimony of Dr. Hughett, who opined that Maloney's limitations rendered her unable to meet the basic standards necessary to perform even unskilled work. The ALJ noted that this opinion conflicted with the

weight of the other medical evidence. For example, the ALJ found that clinical notes from Advanced Counseling Services "reveal that throughout the relevant time period [Maloney] has received essentially routine and conservative treatment for her allegedly disabling mental impairments." Further, the ALJ noted that, "the record indicates that [Maloney] has been able to successfully manage her symptoms with conservative mental health treatment. . . . In fact, in May 2007[,] the records indicate she was doing well on her medications." The conflict between the clinical notes and Hughett's opinion gave the ALJ good reason to discount Dr. Hughett's opinion.[2]

Moreover, Dr. Hughett's opinion was inconsistent with Maloney's own testimony regarding "her ability to engage in [an] array of daily activities and to function socially with no difficulties." Further, Hughett's opinion conflicted with the portions of Maloney's testimony "regarding her ability to work, and with the earnings documentation of record that shows she had been able to successfully maintain employment for several years since the alleged onset date."

Finally, as the ALJ noted, Dr. Hughett's "opinion" consisted only of a check-off sheet that he completed months after last treating Maloney. On the form, Dr. Hughett had checked boxes which indicated that Maloney was "seriously limited" in adhering to the basic standards of cleanliness, public interaction, socially appropriate behavior, and ability to travel. The ALJ noted that Dr. Hughett had examined Maloney on November 13, 2007, at which time the doctor had

---

[2] The parties dispute whether Dr. Hughett was Maloney's treating physician because, in forming his opinion, he relied on the opinion of Maloney's actual treating therapist. However, we need not decide this issue because, even assuming that Dr. Hughett was Maloney's treating physician, his opinion runs counter to the overwhelming weight of the evidence.

declined to complete the form. Dr. Hughett only completed the form on January 22, 2008, after receiving additional information from Maloney's treating therapist and without further examining Maloney. Based on these facts, the ALJ reasoned that Dr. Hughett's opinion was not based on a personal treating relationship. For these reasons — the conflict between Dr. Hughett's opinion and the contemporaneous clinical notes and Maloney's own testimony, as well as the nature of the opinion—the ALJ had good reason to give Dr. Hughett's opinion less than controlling weight.

**2.      Lay witness testimony**

To the extent Maloney argues that the ALJ wrongfully refused to hear Bolek's testimony, she has waived this argument. The ALJ first learned that Maloney's counsel intended to call Bolek as a witness at the very end of the hearing, during the examination of the vocational expert. In pertinent part, the transcript reads:

Atty:   Okay. If she's data entry, like you said, she can't just sit there and do nothing. She's got to . . .

VE:     Well, I don't want to argue with you. But she's working, she's getting paid. She indicated that if it was full-time, she could do it. I don't know what else —

Atty:   I understand. We're going to have Ms. [Bolek] testify to —

ALJ:    No, we're not.

Atty:   You're not going to let Ms. [Bolek] testify?

ALJ:    No, I'm not.

Atty:   Well, that's fine, Your Honor. I think I have grounds for an appeal.

ALJ:    You may have. Go ahead.

Atty:   All right. I mean, you're not—seriously, you're not going to let Joan [Bolek] testify?

ALJ:   What is—what's the relationship that she's going to testify to? Is she a—

Atty:   That she cannot do the jobs that Ms.—the expert witness says.

In the subsequent opinion, the ALJ wrote, "Claimant's sister was present at the hearing but did not testify as a witness. Claimant's counsel never informed the undersigned that he intended to present [the sister] as a witness when he asked if she could sit in on the hearing. Otherwise, she would have been excluded from the hearing before testifying."

Maloney has waived any argument stemming from the exclusion of Bolek's testimony. It is axiomatic that "a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal." *City of Riverview v. Surface Transp. Bd.*, 398 F.3d 434, 443-44 (6th Cir. 2005). Maloney did not raise the issue to the Appeals Council. Maloney contends she could not have raised the issue to the ALJ, because the ALJ did not explain why he excluded the testimony until he issued his opinion. This may be true, but it is immaterial. Maloney had to raise the issue to the agency, and had that opportunity during her administrative appeal to the Appeals Council. Her failure to do so constitutes a waiver. Bolek's affidavit was presented for the first time to the district court, precluding agency review of the issue.

At oral argument, Maloney's counsel asserted that the administrative record omitted a letter he sent to the Appeals Council, which included the Bolek affidavit. "Several reasons justify supplementation of the administrative record, such as when an agency deliberately or negligently excludes certain documents . . . ." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). In

general, a party seeking to add information to an administrative record must do so by a petition to the court or by joint stipulation. *See* Fed. R. App. P. 16. Counsel has not requested such relief via a petition or a stipulation, nor are we persuaded that the circumstances justifying supplementation exist here. Counsel has not provided the court with a copy of the letter he purports to have sent to the Appeals Council, and nothing in the record indicates that the Appeals Council received and reviewed this information in making its decision. Accordingly, the court declines to exercise its discretion to supplement the record.

Even if Maloney had preserved the issue, the ALJ's refusal to hear the testimony is not reversible error. An ALJ in a social security proceeding has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality). If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). But even if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, any error was harmless because no reasonable ALJ could have reached a different disability determination based on Bolek's testimony. In Bolek's undated, electronically-signed affidavit, she avers that she would have testified that:

> (a) I believe Colleen Maloney is unable to work because of her mental problems.

> (b) For example she is obsessively compulsive about any adult male who treats her with kindness. She took a trip on a cruise ship and fell in love with a waiter from the Middle East who waited on her. She proposed marriage to him.

> (c) Colleen Maloney has a part time job which the Vocational Expert used to support the VE's opinion that Colleen Maloney is capable of substantial gainful activity. This job however is no more than a make shift clerical job paid for by government funds that is very low stress. There are no phone duties. There is no filing. Colleen spends most of her time reading novels.

> (d) Colleen is unable to understand her own problems and does not think there is anything wrong with her, when in fact she cannot cope with the normal stress of day to day life.

> (e) I have read the report of Dr. Hughett and I would have substantiated his findings from a lay person's observations

There is no indication how Maloney's purported obsession with "a waiter from the Middle East" makes her unable to work. Further, the testimony runs counter to the weight of the medical evidence and testimony. Maloney's medical records indicate that she was responding well to a conservative regime of treatment that enabled her to live alone and interact with others. Further, Maloney herself testified that she was able to work part-time, would accept a full-time position at her current job if it was offered to her, and was capable of living alone and working. Finally, the vocational expert testified that Maloney is capable of gainful employment. Even considering the testimony of Bolek, the ALJ would not have reached a different disability determination.

Maloney's reliance on a distinguishable case from the Eleventh Circuit does not compel a different conclusion. In *Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995), the court considered a disability claim by a woman who proceeded before the ALJ on a *pro se* basis. The court noted that

where a claimant proceeds *pro se*, the ALJ has a "special duty" to develop the record, which requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 934-35 (citations omitted). Applying this special duty, the *Brown* court noted that the ALJ should have called for the testimony of the claimant's husband when it noticed that the claimant had provided incoherent, rambling testimony. *Id.* at 936. In contrast, Maloney was represented by counsel, and presented cogent testimony that was credited by the ALJ.

Maloney argues that she told the ALJ's assistant that Bolek was to testify, but there is no support for this argument in the record. On the first page of the hearing transcript, the ALJ made an opening statement in which he introduced himself to Maloney and then explained that the VE would also testify. There is no indication that the ALJ knew that Bolek was to testify. Further, the ALJ himself said that counsel "never informed the undersigned that he intended to present [the sister] as a witness when he asked if she could sit in on the hearing." Maloney cannot point to anything in the record that contradicts this statement.

**III.**

The judgment of the district court is affirmed.