**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

WILLIE EARL CARR,

    Plaintiff - Appellee,

v.

COMMISSIONER, SSA,

    Defendant - Appellant.

_____

KIM L. MINOR,

    Plaintiff - Appellee,

v.

COMMISSIONER, SSA,

    Defendant - Appellant.

No. 19-5079

No. 19-5085

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. Nos. 4:18-CV-00272-FHM, 4:18-CV-00418-FHM)**
_____

Amanda L. Mundell, Attorney (Joseph H. Hunt, Assistant Attorney General; Mark B. Stern, Joshua M. Salzman, and Daniel Aguilar, Attorneys, on the briefs) United States Department of Justice, Washington, D.C. for Defendant - Appellant.

Paul F. McTighe, Jr., Tulsa, Oklahoma for the Plaintiffs – Appellees.

_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

This appeal asks whether Social Security disability claimants waive Appointments Clause challenges that they failed to raise in their administrative proceedings.

In separate claims, Willie Earl Carr and Kim L. Minor ("Appellees") sought disability benefits from the Social Security Administration ("SSA"). In each case, the administrative law judge ("ALJ") denied the claim, and the agency's Appeals Council declined to review.

In district court, Mr. Carr challenged the SSA's denial of his claim for disability benefits. While his case was pending, the Supreme Court held that Securities and Exchange Commission ("SEC") ALJs are "inferior officers" under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and therefore must be appointed by the President, a court, or the head of the agency, *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018). Shortly after, Ms. Minor also sued in district court challenging the denial of benefits in her case.

In response to *Lucia*, the SSA Commissioner ("Commissioner") appointed the SSA's ALJs.[1] The Commissioner did so "[t]o address any Appointments Clause questions" *Lucia* posed. Effect of the Decision in Lucia v. Securities and Exchange

---

[1] The SEC had only five ALJs when *Lucia* was decided. *See Lucia*, 138 S. Ct. at 2049. The SSA has approximately 1,600. *See* SSA, *FY 2021 Congressional Justification*, 187-89 (2020), https://perma.cc/M3EJ-ZE23.

2

Commission (SEC) On Cases Pending at the Appeals Council ("Effect of Lucia"), 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). After the Commissioner's action, Mr. Carr and Ms. Minor each filed a supplemental brief, asserting for the first time that the ALJs who had rejected their claims had not been properly appointed under the Appointments Clause.

The district court upheld the ALJs' denials of the claims, but it agreed with the Appointments Clause challenges. The court vacated the SSA decisions and remanded for new hearings before constitutionally appointed ALJs. It held that Mr. Carr and Ms. Minor did not waive their Appointments Clause challenges by failing to raise them in their SSA proceedings.

On appeal, the Commissioner argues that Appellees waived their Appointments Clause challenges by failing to exhaust them before the SSA. Exercising jurisdiction under 28 U.S.C. § 1291, we agree and reverse.

## I. **BACKGROUND**

The following presents an overview of (A) SSA disability proceedings, (B) the Appointments Clause, and (C) the factual and procedural background in these cases.

### A. *Social Security Administrative Procedure*

When a Social Security claimant seeks disability benefits, the SSA makes an "[i]nitial determination" regarding entitlement. 20 C.F.R. § 404.900(a)(1). Dissatisfied claimants may seek agency reconsideration. *Id.* § 404.900(a)(2).

3

A claimant who disagrees with the reconsidered determination may request a hearing before an SSA ALJ. *Id.* § 404.900(a)(3). An ALJ may (1) dismiss the request for a hearing, *id.* § 404.957, (2) remand for a revised determination, *id.* § 404.948(c), (3) issue a decision, *id.* § 404.948(a), or (4) hold a hearing and then issue a decision, *id.* § 404.953. "The issues before the [ALJ] include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor," *id.* § 404.946(a), as well as new issues the ALJ raises, *id.* § 404.946(b). Claimants must "notify the [ALJ] in writing at the earliest possible opportunity" if they "object to the issues to be decided at the hearing." *Id.* § 404.939.

A claimant may appeal an ALJ's decision to the SSA Appeals Council ("Appeals Council"). *Id.* § 404.900(a)(4). If the Appeals Council affirms or declines to review, the claimant may sue in district court within 60 days. *Id.* § 404.900(a)(5); 42 U.S.C. § 405(g).

B. *Appointments Clause*

The Appointments Clause provides:

> [The President] . . . shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

4

U.S. Const. art. II, § 2, cl. 2. "The Supreme Court has defined an officer generally as 'any appointee exercising significant authority pursuant to the laws of the United States.'" *Bandimere v. S.E.C.*, 844 F.3d 1168, 1173 (10th Cir. 2016) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)). "The term 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President: Whether one is an 'inferior' officer depends on whether he has a superior." *Id.* (quotations omitted). Employees—or "lesser functionaries"—need not be appointed under the Appointments Clause. *Id.* at 1170, 1173 (quotations omitted). The Appointments Clause prevents the "diffusion of the appointment power," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "promotes public accountability by identifying the public officials who appoint officers," *Bandimere*, 844 F.3d at 1172.

In *Lucia*, the Supreme Court held that the SEC's ALJs are inferior officers and must be appointed by the President, a court, or a head of agency department. 138 S. Ct. at 2049. Because the ALJ in *Lucia* had not been appointed in one of those ways, the Court vacated the agency's decision that Mr. Lucia had violated the Investment Advisers Act, 15 U.S.C. § 80b–1 *et seq.*, and remanded for a new hearing before a properly appointed ALJ. *Id.* at 2055-56. The Court did not address whether SSA ALJs are also inferior officers subject to Appointments Clause appointment.

C. *Factual and Procedural Background*

Mr. Carr and Ms. Minor separately sought disability benefits in 2014. ALJs heard and denied their claims in 2017. The Appeals Council declined to review both claims,

and they each sued in the Northern District of Oklahoma, contesting the ALJs' decisions on the merits.

After Mr. Carr's suit was filed but before Ms. Minor's, the Supreme Court decided *Lucia*. Several weeks later, the SSA Commissioner appointed the agency's ALJs. *See* Effect of Lucia, 84 Fed. Reg. at 9583. The SSA explained that although

> [t]he Supreme Court's decision in Lucia did not specifically address the constitutional status of ALJs who work in other Federal agencies, including the [SSA,] [t]o address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018[,] the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own.

*Id.*

Mr. Carr and Ms. Minor each filed briefs in district court raising, for the first time, Appointments Clause challenges to the ALJs who denied their claims. The court upheld the ALJs' decisions on the merits but remanded for new hearings before ALJs properly appointed under the Appointments Clause. Relying on *Sims v. Apfel*, 530 U.S. 103 (2000), it concluded that the claimants did not waive their Appointments Clause claims by failing to raise them in their SSA proceedings. *See Willie Earl C. v. Saul*, No. 18-CV-272-FHM, 2019 WL 2613819, at *5 (N.D. Okla. June 26, 2019); *Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019).

The Commissioner appealed as to both Mr. Carr and Ms. Minor. The appeals have been consolidated and were argued together to this panel.

6

## II. **DISCUSSION**

On appeal, the Commissioner "[does] not contest that [SSA] ALJs are inferior officers and that the ALJs had not been properly appointed" when they denied Appellees' benefits claims. Aplt. Br. at 8. He argues only that the district court erred by holding that Appellees were not required to exhaust their Appointments Clause challenges in the administrative proceedings. The Commissioner does not argue that a statute or regulation requires issue exhaustion in the SSA context. He contends we should find such a requirement "even without relying on a specific statute or regulation." *Id.* at 21.

### A. *Standard of Review*

"We review a district court's ruling reversing the Commissioner's final decision de novo, applying the same standards as the district court." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).[2]

---

[2] When a district court excuses (or declines to excuse) a plaintiff's failure to exhaust, we review that decision for abuse of discretion. *See, e.g.*, *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) ("We may disturb [a district court's refusal to excuse failure to exhaust] only if it represents a clear abuse of discretion."); *Koch v. White*, 744 F.3d 162, 164 (D.C. Cir. 2014) ("[T]he decision whether to excuse a *failure* to exhaust is reviewed for an abuse of discretion."). The district court here did not excuse Appellees' failure to exhaust. It held there is no exhaustion requirement for SSA Appointments Clause challenges, and it reversed the ALJs' decisions. *See Willie Earl C.*, 2019 WL 2613819, at *5; *Kim L. M.*, 2019 WL 3318112, at *6.

B. *Additional Legal Background*

1. **Issue Exhaustion**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). Moreover, "[i]n most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court." *Sims*, 530 U.S. at 112 (O'Connor, J., concurring); *see also N.M. Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1165 n.25 (10th Cir. 2019) ("In general, an issue must have been raised before an agency for a party to seek judicial review of agency action on that issue."); *Nuclear Energy Inst., Inc. v. Envtl. Prot. Agency*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) ("It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review.").

When a statute or regulation requires issue exhaustion, claimants waive issues they fail to raise in their administrative proceedings. *See Malouf v. S.E.C.*, 933 F.3d 1248, 1255 (10th Cir. 2019) (holding that an SEC claimant waived an Appointments Clause challenge he did not raise before the agency); *Energy W. Mining Co. v. Lyle ex rel. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019) (ruling that a claimant waived an Appointments Clause challenge he failed to raise in his administrative hearing for Department of Labor benefits). The Supreme Court has recognized that it has "imposed an issue-exhaustion

8

requirement even in the absence of a statute or regulation." *Sims*, 530 U.S. at 108; *see also United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

The exhaustion requirement, whether it concerns a remedy or an issue, furthers two main institutional interests. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). First, it allows agencies "to correct [their] own mistakes." *Id.* (quotations omitted); *see also L. A. Tucker*, 344 U.S. at 37 ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."). Second, it "promotes efficiency" by expediting claims, limiting the number of cases that reach federal courts, and conserving resources. *See Woodford*, 548 U.S. at 89; *see also In re DBC*, 545 F.3d 1373, 1379 (Fed. Cir. 2008) (requiring issue exhaustion because it served efficiency and agency autonomy). Courts thus have declined to require issue exhaustion only in rare circumstances, such as in *Sims*. Because the district court here relied on *Sims* for its decision, we provide an overview of that case.

2. *Sims v. Apfel*

In *Sims*, the Supreme Court held that an SSA claimant did not waive issues she wished to raise in district court and that she had failed to specify in her request for Appeals Council review. 530 U.S. at 112. The SSA ALJ had denied the claimant's request for benefits. The claimant sought Appeals Council reconsideration but did not identify the issues she wished to have reviewed. *Id.* at 105. The Appeals Council denied review. *Id.* She sued in district court, this time listing her challenges to the ALJ's

9

decision. *Id.* at 105-06. Because she raised issues in district court that she had not identified in her appeal to the Council, the court held that it lacked jurisdiction. The Fifth Circuit affirmed. *Id.* at 106 (citing *Sims v. Apfel*, 200 F.3d 229, 230 (5th Cir. 1998) (per curiam)).

The Supreme Court reversed in a fractured decision. Five Justices joined the first section of Justice Thomas's analysis, but only four joined the second section. Justice O'Connor, who joined the first section but not the second, wrote a concurrence. Because she relied on narrower grounds than the plurality, her analysis governs. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations omitted)); *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 155 n.4 (3d Cir. 2020) ("Under the rule of [*Marks*], Justice O'Connor's analysis . . . controls."). We summarize below the various opinions.

a. *Majority*

In the first section of his analysis, joined by the majority, Justice Thomas observed that issue exhaustion, even without a statute or regulation requiring it, is "a general rule because it is usually appropriate under an agency's practice for contestants in an adversary proceeding before it to develop fully all issues there." 530 U.S. at 109 (quotations and brackets omitted). But when "an administrative proceeding is not

10

adversarial, . . . the reasons for a court to require issue exhaustion are much weaker" and do not apply to SSA Appeals Council proceedings. *Id.* at 110.

b. *Plurality*

Justice Thomas's second analysis section received only four votes. There, the plurality said that issue exhaustion should not be required because "Social Security proceedings are inquisitorial rather than adversarial." *Id.* at 110-11. It reasoned that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, and the Council's review is similarly broad." *Id.* at 111 (citation omitted).

The plurality said that "the Council's review is plenary unless it states otherwise" and that Appeals Council petition forms "provide[] only three lines for the request for review." *Id.* at 111-12. It concluded that the SSA process "therefore strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review." *Id.* at 112.

c. *Justice O'Connor's concurrence*

Justice O'Connor concurred in the judgment and joined only the first section of Justice Thomas's analysis. She observed that, "[i]n most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court[,]" but that, "[i]n the absence of a specific statute or regulation requiring issue exhaustion, . . . such a rule is not always appropriate." *Id.* at 112-13 (O'Connor, J., concurring). In her view, "the agency's failure to notify claimants of an issue exhaustion requirement in

11

this context is a sufficient basis for our decision[,]" and "[r]equiring issue exhaustion is particularly inappropriate here, where the regulation and procedures of the [SSA] affirmatively suggest that specific issues need not be raised before the Appeals Council." *Id.* at 113. Because Appeals Council review is plenary and Appeals Council petition forms contain only three lines, the claimant "did everything that the agency asked of her" even though she did not specify issues in the form. *Id.*

## C. *Analysis*

Because the Commissioner does not argue that a statute or regulation requires issue exhaustion, we consider whether the institutional interests supporting issue exhaustion apply here. We then address whether the district court appropriately departed from the exhaustion rule. We conclude exhaustion should apply here and that the district court erroneously relied on *Sims*. We therefore reverse.

### 1. **Purposes of Issue Exhaustion**

We address whether the purposes for the exhaustion rule apply to the Appellees' Appointments Clause challenges.[3]

---

[3] Although we have not addressed whether exhaustion is necessary in the SSA ALJ context, other circuits have imposed an exhaustion requirement. *See, e.g.*, *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003); *Mills v. Apfel*, 244 F.3d 1, 4-5 (1st Cir. 2001). The Third Circuit is the only federal appellate court that has addressed exhaustion of an Appointments Clause challenge in the SSA ALJ context. It held that claimants do not waive such challenges by failing to raise them before their ALJs. *See Cirko*, 948 F.3d at 159.

12

First, had Appellees exhausted their Appointments Clause claims, the SSA could have corrected an appointment error. *See Woodford*, 548 U.S. at 89. The SSA "might have changed its position on the Appointments Clause issue; and 'if it did not, [it] would at least [have been] put on notice of the accumulating risk of wholesale reversals being incurred by its persistence." *Malouf*, 933 F.3d at 1257 (quoting *L. A. Tucker*, 344 U.S. at 37). Even if corrective action was unlikely "at the behest of a single [benefits claimant]," *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976), Appellees' failure to exhaust their Appointments Clause challenges deprived the SSA of its interest in internal error-correction, *see Woodford*, 548 U.S. at 89.[4]

Second, an exhaustion requirement here would have promoted both judicial and agency efficiency. *See id.* Judicial efficiency would have been served if the SSA Commissioner had appointed its ALJs in response to Appellees' raising their Appointments Clause challenges before the agency. Their doing so could have saved the judiciary the time and expense of this litigation and the scores of similar cases currently on appeal around the country. *See* Aplt. Br. at viii-xi (listing 49 related appeals in United States circuit courts); *McKart v. United States*, 395 U.S. 185, 195 (1969) ("A complaining party may be successful in vindicating his rights in the administrative

---

[4] Even though the Supreme Court did not decide *Lucia* until after the ALJ decisions here, this court had decided *Bandimere*, holding, as in *Lucia*, that the SEC's ALJs had not been properly appointed.

13

process.  If he is required to pursue his administrative remedies, the courts may never have to intervene.").

As to agency efficiency, the SSA could have addressed the Appointments Clause issue in the first instance if Appellees had raised it in their administrative proceedings and avoided the possibility of having to conduct two ALJ merits hearings on their disability benefits claims and those of many others.  This prospect would undermine administrative efficiency and delay pending cases.  *In re DBC*, 545 F.3d at 1379 ("If [the plaintiff] had objected to the [agency], instead of to this court in the first instance, it could have obtained relief immediately, and thus avoided the unnecessary expenditure of the administrative resources of the [agency] . . . .").  As the Commissioner notes, SSA proceedings are time-consuming and the agency is flooded with claimants.  *See* Aplt. Br. at 27; *see also* SSA, *Annual Performance Report, Fiscal Years 2019–2021*, 3 (2020), https://perma.cc/5GFC-2HKM (noting that "the average wait time for a hearing decision [is] 470 days").[5]

---

[5] Even if Appellees were to prevail on their Appointments Clause challenges here, they do not contest on appeal the district court's affirmance of the agency's denial of benefits.  Oral Arg. at 25:07-25:30.  In *Bandimere* and *Lucia*, by contrast, the claimants appealed the ALJs' merits decisions as well as the ALJs' appointments.  *See* Opening Brief of Petitioner at 18, *Bandimere v. S.E.C.*, 844 F.3d 1168 (10th Cir. 2016) (No. 15-9586); Opening Brief for Petitioners at 46, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) (No. 15-1345).

2. **No Exception to Issue Exhaustion Should Apply**

In finding an exception to the issue exhaustion requirement, the district court mistakenly relied on *Sims*, which held that exhaustion before the SSA Appeals Council is not required.

First, the Supreme Court in *Sims* cautioned that its holding did not apply to the issue before us. It held only that, when the claimant failed to raise issues in her petition for Appeals Council review, she did not waive her ability to raise those issues in district court. The Court emphasized that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Sims*, 530 U.S. at 107. And the four-Justice dissent predicted that "the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ." *Id.* at 117 (Breyer, J., dissenting).[6] Appellees here did not present their Appointments Clause challenges to the ALJs or the Appeals Council.

Second, the reasons the *Sims* Court did not require issue exhaustion in petitions to the Appeals Council do not apply to SSA ALJ hearings. Justice O'Connor, providing the deciding vote, observed that SSA Appeals Council petition forms provide only three lines for claimants to specify the bases for appeal, and that appellate review is plenary by

---

[6] Since *Sims*, other circuits have imposed an issue exhaustion requirement in the SSA ALJ context. *See, e.g.*, *Shaibi*, 883 F.3d at 1109 (holding that "*Sims* concerned only whether a claimant must present all relevant issues to the *Appeals Council*," and that claimants "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal" (quotations omitted)); *Mills*, 244 F.3d at 4 (observing that the failure to specify issues for Appeals Council review is "entirely different from failing to offer evidence in the first instance to the ALJ, which is far more disruptive of the review function").

15

default. *Id.* at 113-14 (O'Connor, J., concurring). The *Sims* claimant, therefore, "did everything that the agency asked of her" by filling out the form, even though she did not specify the contested issues on appeal. *Id.* at 114.

By contrast, SSA ALJs must notify claimants of the "specific issues to be decided" at each hearing, 20 C.F.R. § 404.938(b)(1), and claimants must "notify the [ALJs] in writing at the earliest possible opportunity" if they "object to the issues to be decided at the hearing," *id.* § 404.939. If Appellees' ALJs did not list the Appointments Clause as an issue "to be decided," Appellees needed to object and raise it. The claimant in *Sims* did not have a similar obligation with respect to Appeals Council review.[7]

Third, the district court placed undue weight on the "non-adversarial" nature of SSA ALJ proceedings. Although the *Sims* majority said the basis for issue exhaustion is weakest when agency determination of benefits is inquisitorial, only the plurality relied on this rationale to hold exhaustion was not required. The district court failed to recognize that Justice O'Connor's controlling concurrence relied on a narrower ground. That is, the SSA does not notify claimants they must raise issues to the Appeals Council, the Appeals Council review is plenary, and the claimant "did everything that the agency asked of her" even though she identified no issues for review. *Sims*, 530 U.S. at 114 (O'Connor, J., concurring). Justice O'Connor's reasoning does not apply to SSA ALJ

_____

[7] The Commissioner does not argue that § 404.939 requires issue exhaustion before SSA ALJs. We need not decide that question, because we hold exhaustion of Appointments Clause challenges is necessary even without a statutory or regulatory requirement.

16

proceedings, where, as noted above, SSA regulations require claimants to object if they dispute the issues to be decided at their ALJ hearings.

Fourth, even if SSA ALJ review of disability claims is largely non-adversarial, Appointments Clause challenges are "adversarial" as described in *Sims*. The *Sims* majority recognized that a proceeding is inquisitorial when the agency develops the issues on its own and adversarial when the "parties are expected to develop the issues." *Id.* at 110.

An SSA ALJ typically develops issues regarding benefits, but a claimant must object to an ALJ's authority. *See, e.g.*, 20 C.F.R. § 404.940 (explaining that a claimant who believes an ALJ is prejudiced "must notify the [ALJ of the objection] at [the] earliest opportunity"); *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 467 (E.D. Pa. 2019) ("[An Appointments Clause] attack on the structural integrity of the process itself[] is as adversarial as it gets and under . . . *Sims* presents the strongest case for requiring issue exhaustion." (citation and quotations omitted)).

Fifth and finally, the Third Circuit's decision in *Cirko* is unpersuasive and counter to our precedent.[8] There, the court held that claimants need not exhaust Appointments Clause challenges before the SSA ALJ. It reasoned that, given their constitutional nature,

---

[8] *Cirko* was decided after the parties filed their opening briefs. In its reply brief, filed after *Cirko*, the Commissioner argues we should not follow the Third Circuit. Aplt. Reply Br. at 11.

such challenges are "beyond the power of the agency to remedy." *Cirko*, 948 F.3d at 157.

We rejected this view in *Malouf* and *Energy West*. *See Malouf*, 933 F.3d at 1257 (explaining that an administrative Appointments Clause challenge would have notified the agency of the need to appoint its ALJs, a remedy within the SSA's authority); *Energy W.*, 929 F.3d at 1206 (observing that an Appointments Clause challenge would not have been futile because the agency's appellate tribunal could vacate a judgment by an unappointed ALJ). And to the extent *Cirko* relied on *Sims*, we decline to follow it for the reasons discussed.[9]

*     *     *     *

The district court failed to provide adequate reasons to depart from the general principle that "an issue must have been raised before an agency for a party to seek judicial review of agency action on that issue." *N.M. Health Connections*, 946 F.3d at 1165 n.25.[10]

---

[9] We also have recognized that an issue exhaustion requirement discourages the strategic practice of "sandbagging." *Freytag v. Comm'r*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring). That is, without an exhaustion requirement, a claimant might proceed through the administrative process without raising an issue and then, if the SSA denies benefits, raise the issue in court and seek a new ALJ hearing. *See Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 431 n.6 (10th Cir. 2011) ("In practice, the requirement that plaintiffs exhaust their administrative remedies greatly minimizes the threat of sandbagging—i.e., the concern that plaintiffs will shirk their duty to raise claims before the agency, only to present new evidence at trial that undermines the agency's decision." (quotations omitted and alterations incorporated)).

[10] Assuming, as we have found, issue exhaustion is required, Appellees urge us to excuse their failure to raise their Appointments Clause challenge before the agency. The

## III. **CONCLUSION**

We reverse the district court's judgment.

---

district court did not address this issue. We decline to excuse Appellees' failure to exhaust for substantially the same reasons we have found an issue exhaustion requirement.