RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOYCE RAMSEY (19-1579); JOSEPH FORTIN (19-1581); MICHAEL SHOOPS (19-1586); ANTHONY HUTCHINS (19-1889); VICKY HARRIS (19-1977); SUSAN FLACK (19-3886),

> *Plaintiffs-Appellants,*

*v.*

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee.*

Nos. 19-1579/1581/1586/
1889/1977/3886

Appeals from
United States District Court for the Eastern District of Michigan at Detroit

19-1579: No. 2:17-cv-13713—Nancy G. Edmunds, District Judge;
19-1581: No. 2:18-cv-10187—David M. Lawson, District Judge;
19-1586: No. 2:18-cv-10444—Nancy G. Edmunds, District Judge;
19-1889: No. 2:18-cv-10182—Robert H. Cleland, District Judge;
19-1977: No. 2:18-cv-11042—Stephen J. Murphy, III, District Judge.

United States District Court for the Southern District of Ohio at Columbus

19-3886: No. 2:18-cv-00501—Sarah Daggett Morrison, District Judge.

Argued: May 1, 2020

Decided and Filed: September 1, 2020

Before SILER, WHITE, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** David F. Chermol, CHERMOL & FISHMAN, LLC, Philadelphia, Pennsylvania, for Appellants Ramsey, Fortin, Shoops, and Harris. Mahesha P. Subbaraman, SUBBARAMAN PLLC, Minneapolis, Minnesota, for Appellant Flack. Joshua M. Salzman, UNITED STATES

DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Mahesha P. Subbaraman, SUBBARAMAN PLLC, Minneapolis, Minnesota, Carol Herdman, HERDMAN YEAGER LLC, Columbus, Ohio, for Appellant Flack.  Jason M. Turkish, Ryan T. Kaiser, Melissa M. Nyman, NYMAN TURKISH PC, Southfield, Michigan, for Appellants Ramsey, Fortin, Shoops, and Harris.  Daniel S. Jones, LAW OFFICES OF CHARLES E. BINDER AND HARRY J. BINDER, LLP, New York, New York, for Appellant Hutchins.  Kevin M. Parrington, Luis Pere, Christopher L. Potter, Lisa G. Smoller, Timothy S. Bolen, SOCIAL SECURITY ADMINISTRATION, Boston, Massachusetts, Meghan O'Callaghan, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

WHITE, J., delivered the opinion of the court in which DONALD, J., joined.  SILER, J. (pp. 14–15), delivered a separate dissenting opinion.

─────────────────

**OPINION**

─────────────────

HELENE N. WHITE, Circuit Judge.  Plaintiffs-Appellants Social Security disability benefit and supplemental security income benefit claimants ("claimants") appeal from district court orders rejecting their Appointments Clause challenges to the administrative law judges (ALJ) who heard their cases, on the basis that they forfeited the issue by not raising it during their administrative proceedings.  For the reasons that follow, we **VACATE** the judgments of the district courts and **REMAND** these consolidated cases to the Social Security Administration for new hearings before constitutionally appointed ALJs other than the ALJs who presided over claimants' first hearings.

I.

Claimants in these consolidated cases sought Social Security disability and/or supplemental security income (SSI) benefits.  In each case, the application for benefits was denied, and an ALJ upheld the decision to deny benefits.  After requesting review by the Appeals Council and being denied relief, claimants sought judicial review of the denial of benefits. While the appeals were pending, claimants moved to raise an issue they had not raised during the administrative hearing process—an Appointments Clause challenge to the ALJs' appointments. In the wake of the Supreme Court's decision in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), that the ALJs of the Securities and Exchange Commission ("SEC") had

not been appointed in a constitutionally legitimate manner and therefore remand for a de novo hearing before a different ALJ was required, the claimants argued that a similar constitutional problem exists here that entitles them to new hearings before different ALJs.[1]

The Commissioner did not contest the merits of claimants' Appointments Clause challenge; rather, the Commissioner argued that the claimants forfeited review of the issue because they failed to raise it during their administrative hearings. The district courts agreed with the Commissioner that the Appointments Clause challenges were forfeited and affirmed the denial of benefits on the merits. The claimants now appeal.

II.

A.

The question is one of issue exhaustion: must the claimants have raised their Appointments Clause challenge before the ALJ in order to preserve that challenge for judicial review. As we explained in *Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018) and again in *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 745 (6th Cir. 2019), to "resolve an agency's argument that a party failed to exhaust a post-*Lucia* constitutional challenge[,]" we ask three questions. *Island Creek*, 937 F.3d at 745-46. First, must a party seeking judicial review of the agency's decision exhaust issues with that agency? If so, did the party properly exhaust their claim? Finally, "[i]f not, do these constitutional claims nevertheless fall within an exception to the exhaustion requirement?" *Id.* at 746.

---

[1]In *Lucia*, the Court held that because SEC ALJs exercise "significant discretion" in carrying out their "important functions," the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, requires that they be appointed by the President, a court of law, or a head of department. 138 S. Ct. at 2053. Because SEC ALJs had not been so appointed, the Court held that the proper remedy was a de novo hearing before a constitutionally appointed officer other than the officer who first heard the case. *Id.* at 2055. Like SEC ALJs, Social Security ALJs were not appointed by the President, a court, or the head of department. Rather, they were hired by the Office of Personnel Management. In anticipation of claimants making similar arguments in Social Security cases, the Acting Commissioner of Social Security ratified the appointments of all Social Security ALJs on July 16, 2018, thereby foreclosing any future Appointments Clause challenges to ALJ decisions after that date. However, the ALJs' decisions upholding the denial of benefits in claimants' cases were made before the ALJs' appointments were ratified.

Although we are presented with an issue not yet addressed in this circuit, three other circuits have recently considered this precise issue. In *Cirko v. Commissioner of Social Security*, 948 F.3d 148 (3d Cir. 2020), the Third Circuit held that issue exhaustion of an Appointments Clause challenge is not required in Social Security proceedings. *Id.* at 159. Recently, the Tenth and Eighth Circuits disagreed with *Cirko* in *Carr v. Commissioner of Social Security*, 961 F.3d 1267 (10th Cir. 2020), and *Davis v. Commissioner of Social Security*, 963 F.3d 790 (8th Cir. 2020). We find *Cirko* to be the best reasoned and most persuasive opinion, and we agree with *Cirko* that exhaustion of Appointments Clause challenges in this particular administrative scheme is not required.

We note initially that we have rejected categorical arguments that "longstanding principles of administrative law" compel the enforcement of a "universal exhaustion requirement across all federal statutes in common-law fashion." *Island Creek*, 937 F.3d at 746. As we explained in *Island Creek*, "exhaustion primarily raises a question of statutory interpretation about 'the particular administrative scheme at issue.'" *Id.* (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Thus, an analysis of whether exhaustion is required cannot be divorced from the administrative scheme under review. *See, e.g.*, *id.* ("On closer inspection, though, the Department of Labor's generic framing—unconnected, as it is, to any specific statute— overstates things.").

The "Supreme Court has identified three categories of statutory schemes [to aid courts] when deciding if a specific statute contains an issue-exhaustion mandate." *Id.* The first category of issue-exhaustion requirements are "creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000). In *Jones Brothers*, we found that the Mine Act required exhaustion because the statute specifically stated that "[n]o objection that has not been urged before the [Federal Mine Safety and Health Review] Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 30 U.S.C. § 816(a)(1). The second category of issue-exhaustion requirements involves statutes that do not explicitly require exhaustion "but permit agencies to adopt regulations detailing their internal claims-processing rules." *Island Creek*, 937 F.3d at 747. Where this is the case, "it is common for an agency's regulations to require issue exhaustion in administrative appeals." *Sims*,

530 U.S. at 108.  As long as the exhaustion regulation comports with the governing statute from which it arises and the agency does not misinterpret it or apply it in an arbitrary manner, courts generally enforce the regulation by refusing to consider unexhausted issues.  *Island Creek*, 937 F.3d at 747.  For example, we concluded in *Island Creek* that the Black Lung Benefits Act fell into this second category of exhaustion because a regulation required parties "to file petitions for review identifying 'specific issues to be considered' by the Board."  *Id.* at 749.  Because of this regulation, we concluded that a claimant must exhaust an Appointments Clause challenge before the Board in order for it to be the subject of later judicial review.

The Commissioner concedes that there are no statutory or regulatory exhaustion requirements governing Social Security proceedings.[2]  This leaves us with the final category—judicially imposed exhaustion requirements.  The Supreme Court has held that "a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme."  *Id.* at 747.  In *Sims*, the Court explained that "[t]he basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts."  530 U.S. at 108.  "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).  This inquiry is "intensely practical . . . because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative

---

[2]Despite the concession, portions of the Commissioner's briefing could be construed as suggesting that such a regulatory-exhaustion requirement exists.  For instance, in describing the regulations governing adjudication of Social Security cases, the Commissioner notes the regulation requiring that "[t]he claimant must identify all objections at the earliest possible juncture."  Comm'r Br. at 17 (citing 20 C.F.R. § 416.1433(a)(3)).  But, that regulation governs how a claimant requests an initial hearing before an ALJ, so its statement that a claimant "should" include in her request "the reasons [she] disagree[s] with the *previous* determination or decision" concerns the agency's initial decision and is not a directive that a claimant should *prospectively* argue against the legitimacy of an as-yet-unassigned ALJ's appointment.  *See* 20 C.F.R. § 416.1433(a)(3) (emphasis added).  The Commissioner additionally cites 20 C.F.R. §§ 404.940, 416.1440 in support of the assertion that the regulations require claimants to notify the ALJ at the earliest opportunity of any objections to the ALJ who will conduct the hearing.  Those sections, however, deal with the disqualification of ALJs and are plainly directed at allegations of bias or special interest, not to allegations that the hearing officer has been appointed in a constitutionally infirm manner.  *See* 20 C.F.R. § 404.940 ("An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.").  Even if this regulation could encompass challenges to an ALJ's appointment, the remedy contemplated by the regulation is reassignment to another ALJ who might also have been improperly appointed at the time.  Therefore, we agree with the parties that Social Security regulations do not require exhaustion.

procedure provided." *Id.* (internal quotation marks and citations omitted). Here, both factors weigh against imposing an exhaustion requirement for Appointments Clause challenges in Social Security proceedings.

*Characteristics of the Particular Administrative Scheme*

The parties appropriately focus much of their briefing on the Supreme Court's decision in *Sims*, which is the Court's latest opinion on exhaustion requirements in Social Security proceedings. There, the Court considered whether issue exhaustion is required at the Appeals Council level. The Court held that a claimant who exhausts administrative remedies "need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." 530 U.S. at 112. The votes in *Sims* were fractured, however, and no rationale for why a claimant need not exhaust issues at the Appeals Council commanded the votes of five Justices. We summarize the positions below.

Five Justices agreed that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." 530 U.S. at 109. Thus, the Court noted, in typical adversarial proceedings, "courts require administrative issue exhaustion as a general rule because it is usually appropriate under an agency's practice for contestants in an adversary proceeding before it to develop fully all issues there." *Id.* (cleaned up). Where the onus is on the parties to develop the issues to be decided, "the rationale for requiring issue exhaustion is at its greatest." *Id.* at 110. "Where, by contrast, an administrative proceeding is not adversarial . . . the reasons for a court to require issue exhaustion are much weaker." *Id.*

Justice Thomas's plurality opinion concluded that issue exhaustion should not be required at the Appeals Council because the analogy to judicial proceedings is at its weakest in Social Security cases for several reasons. First, "Social Security proceedings are inquisitorial rather than adversarial." *Id.* at 110-11. The ALJ, not the parties, is responsible for developing the administrative record by "investigat[ing] the facts and develop[ing] the arguments both for and against granting benefits." *Id.* The Commissioner does not have a representative appear—either at the initial hearing before the ALJ or at the Appeals Council—to oppose the claimant's

request for benefits.  And the regulations specifically state that the Administration's review process is informal and non-adversarial.  *Id.* at 111.

Additionally, the regulations suggest that the Social Security Administration (SSA) does not depend on individual claimants to flag issues for review.  A claimant requesting review by the Appeals Council is provided a form with only three lines for the "request for review," and a notice included with the form explains that it can be completed in approximately 10 minutes.  *Id.* at 112.  Although a claimant is allowed to present a brief with this request, the claimant is not required to do so.  The Appeals Council, unlike some other agencies, is not specifically limited by the regulations to addressing only those issues raised by the claimant.  Indeed, the Appeals Council's review is plenary, and the Appeals Council may conduct such a review *sua sponte* without a request from the claimant.  The *Sims* plurality noted that the encouragement of agency-driven development of the issues in Social Security cases is understandable given the large number of claimants who proceed *pro se* or who are represented by non-attorneys.  For these reasons, the plurality concluded that the "adversarial development of issues by the parties . . . simply does not exist" and that "the general rule [of issue exhaustion] makes little sense in this particular context."  *Id.*

Justice O'Connor concurred in part and in the judgment that exhaustion is not required at the Appeals Council, but did not join the part of the plurality opinion that concluded exhaustion should not be required because the analogy to adversarial proceedings is at its weakest in Social Security cases.  In her view, "the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for [the] decision."  *Id.* at 113 (O'Connor, J., concurring in part and in the judgment).  Justice O'Connor noted that "[r]equiring issue exhaustion is particularly inappropriate here, where the regulation and procedures of the Social Security Administration (SSA) affirmatively suggest that specific issues need not be raised before the Appeals Council."  *Id.*  In support, Justice O'Connor observed that the regulations do not require claimants to file a brief with the Appeals Council.  Moreover, claimants using the form provided by the agency are "provide[d] only three lines (roughly two inches) for the statement of issues and grounds for appeal, and the SSA estimates that it should take a total of 10 minutes to read the instructions, collect the relevant information, and complete the form."  *Id.*

Because the agency's regulations "provide no notice that claimants must also raise specific issues before the Appeals Council to reserve them for review in federal court," Justice O'Connor concluded additional exhaustion requirements are inappropriate. *Id.* at 113-14.

All agree that *Sims* does not dictate the result here because the *Sims* Court made clear that it was only deciding the issue before it—whether issue exhaustion is required at the Appeals Council—and explained that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id.* at 107. We are presented with the question *Sims* specifically reserved. In addressing that question, we agree with the Third and Tenth Circuits that the *Marks* rule requires us to treat Justice O'Connor's concurrence as the holding of the Court, as it reached the same result on the narrowest grounds. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations marks omitted)); *Carr*, 961 F.3d at 1272; *Cirko*, 948 F.3d at 155 n.4 (3d Cir. 2020).

As it turns out, however, both approaches yield the same result. Under Justice O'Connor's approach, an implied exhaustion requirement is inappropriate because the agency's regulations provide no notice to claimants that their failure to raise an Appointments Clause challenge at the ALJ level will preclude them from later seeking a judicial decision on the issue. In fact, just as with appeals to the Appeals Council, the regulations do not require claimants to state their case or present written arguments during ALJ hearings. *See* 20 C.F.R. § 404.949; *Cirko*, 948 F.3d at 156. The regulations also confirm agency-driven development of the issues. Although the regulations allow any party to raise a new issue if the ALJ does not do so, there is nothing in the regulations explaining that failing to raise the issue precludes the claimant from seeking a judicial decision on that issue.

The one difference in the regulations governing ALJ hearings is the regulation that a claimant "should" state "the reasons [she] disagree[s] with the *previous* determination or decision" when requesting an initial hearing before an ALJ. 20 C.F.R. § 416.1433(a)(3) (emphasis added). Although that regulation might provide greater justification for requiring

issue exhaustion at the ALJ level of claims of error in the agency's initial decision, it is plainly not a directive requiring claimants to prospectively raise arguments about the constitutional inadequacy of an as-yet-unassigned ALJ's appointment. Therefore, because Social Security regulations "provide no notice that claimants must also raise specific issues before the [ALJ] to reserve them for review in federal court," 530 U.S. at 113-14, Justice O'Connor's approach would not require exhaustion of an Appointments Clause challenge before the ALJ.

Similarly, the reasons the *Sims* plurality rejected an issue-exhaustion requirement for Appeals Council hearings apply just as strongly to proceedings before an ALJ. The analogy to normal adversarial litigation remains at its weakest because the proceeding is inquisitorial rather than adversarial. On this point, we disagree with the Tenth Circuit's *Carr* decision's assertion that "even if SSA ALJ review of disability claims is largely non-adversarial, Appointments Clause challenges are adversarial." 961 F.3d at 1275. This position is belied by the Commissioner's ratification of all SSA ALJ appointments and the SSA's decision not to contest the merits of claimants' Appointments Clause challenge here or in any similar case. In the wake of *Lucia*, the Commissioner issued Social Security Ruling 19-1p (effective March 15, 2019), which was intended to grant relief to any claimant who "(1) timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018 [the date the Commissioner ratified the appointments]; and (2) raises before us (either at the Appeals Council level or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case." Although that Ruling[3] does not aid the claimants here, it underscores that there is little about the SSA's response to the claimants' Appointments Clause challenges that has been adversarial. Thus, under either approach, the characteristics of this particular administrative scheme weigh against implying an issue-exhaustion requirement for Appointments Clause challenges.

---

[3]This ruling also undermines the Commissioner's argument that requiring exhaustion would have furthered one of the principal justifications for requiring exhaustion: providing the agency with an opportunity to correct its own mistakes. In fact, before this ruling, the Commissioner had instructed ALJs *not* to take any action on Appointments Clause challenges. *See* U.S. SOC. SEC. ADMIN., EM-180003: *Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* 1-2 (eff. Jan. 30, 2018). Until March 2019, there was no evidence that the agency had taken any corrective action, despite the mounting number of Appointments Clause challenges around the country and the agency's awareness that SSA ALJs' appointments might have been constitutionally inadequate. *See Cirko*, 948 F.3d at 159 n.12.

*The Nature of the Claim Presented*

Because "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer[,] [e]xhaustion concerns apply with particular force when the action under review involves the exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *McCarthy*, 503 U.S. at 145. This rationale explains why the circuit courts in many of the cases cited by the Commissioner concluded that issues particularly within the agency's expertise were forfeited when not raised during administrative proceedings. For example, in *Maloney v. Commissioner of Social Security*, 480 F. App'x 804 (6th Cir. 2012), we held that a claimant "ha[d] waived any argument stemming from the exclusion of [claimant's sister-in-law's testimony]" because the claimant failed to raise that issue before the Social Security Appeals Council. *Id.* at 810. And, in *Anderson v. Barnhart*, 344 F.3d 809 (8th Cir. 2003), the Eighth Circuit held that a claimant waived any argument that the ALJ failed to consider the claimant's morbid obesity as an impairment because "[the claimant] never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing." *Id.* at 814. That decision relied on earlier Eighth Circuit precedent holding that an ALJ is under no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Id.* (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). And, in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), the court held that a claimant could not challenge a vocational expert's testimony by seeking to introduce new evidence for the first time in the district court to rebut that testimony, at least when the claimant was represented by counsel. *Id.* at 1109. Finally, in *Mills v. Apfel*, 244 F.3d 1 (1st Cir. 2001), the First Circuit refused to allow a claimant to argue in the district court that the ALJ erred by improperly applying a particular regulation because the claimant had not made the argument to the ALJ or the Appeals Council." *Id.* at 8.

These cases are distinguishable because an Appointments Clause challenge involves neither an exercise of discretion, nor an issue within the agency's special expertise.[4] Rather, it

_____

[4]To the extent these appeals ask us to predict whether the Supreme Court would extend *Sims* to the initial ALJ hearing, it is noteworthy that even the four dissenting Justices in *Sims* conceded that constitutional challenges

involves a question of constitutional law, and we agree with the Third Circuit that "exhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." *Cirko*, 948 F.3d at 153 (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 536-37 (1962)); *see also Mathews v. Eldridge*, 424 U.S. 319, 30 (1976) ("It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context."); *Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) (declining to enforce exhaustion of an Appointments Clause challenge). The importance of the constitutional claim weighs in favor of providing a forum in which the claim can be adjudicated and against implying an exhaustion requirement. This is especially so given the substantial number of claimants who appear before an ALJ pro-se or through non-attorney representatives. While pro-se claimants or non-attorney representatives might be able to make cogent arguments about why the initial agency decision denying disability benefits was incorrect, they are unlikely to recognize that there is a structural constitutional error affecting the legitimacy of the ALJ who is to hear the initial appeal of that decision. And, as we noted above, they are not given notice by SSA regulations that the failure to raise such a claim forecloses them from doing so in the future.

The Commissioner responds that our decisions in *Jones Brothers* and *Island Creek* foreclose any argument that the constitutional nature of the Appointments Clause challenge affects whether exhaustion is appropriate. But, those decisions hold only that the constitutional nature of the claimants' Appointments Clause challenge cannot override explicit statutory- or regulatory-exhaustion requirements. Because there are no such requirements here, these decisions do not control our analysis. To the contrary, they support our decision that a greater number of factors bear on the question whether exhaustion should be required (or whether an

---

are a recognized exception to the "ordinary principle[] of administrative law" that a litigant must raise issues below in order to obtain court review. *See Sims*, 530 U.S. at 114-15 (Breyer, J., dissenting) ("Although the rule has exceptions, it applies with particular force where resolution of the claim significantly depends upon specialized agency knowledge or practice. In this case, petitioner asked the reviewing court to consider arguments of the kind that clearly fall within the general rule, namely, whether an administrative law judge should have ordered a further medical examination or asked different questions of a vocational expert. No one claims that any established exception to this ordinary 'exhaustion' or 'waiver' rule applies. *See, e.g.*, . . . *Mathews v. Eldridge*, 424 U.S. 319, 329 n.10 (1976) (constitutional claims).").

exception to exhaustion applies) in the absence of explicit statutory- or regulatory-exhaustion requirements. *See, e.g.*, *Island Creek*, 937 F.3d at 751 ("When it comes to exceptions, a sharp divide separates statutory from prudential exhaustion. For exhaustion rules that originate with a clear *statutory command*, courts have 'refus[ed] to add unwritten' exceptions on top of those in the text itself . . . [but], [f]or exhaustion rules that originate with *judicial prudence*, courts have felt free to adopt 'judge-made exceptions' in the same prudential fashion."). Indeed, in *Island Creek*, we distinguished the Supreme Court's decision in *Freytag*, which excused a forfeited Appointments Clause claim because of the constitutional nature of the challenge, on the grounds that "*Freytag* treated the exhaustion mandate in that tax context as arising on purely prudential grounds, which allowed it to adopt any purely prudential exception that it felt proper." *Id.* at 754. Not only is an implied exhaustion requirement inappropriate for Appointments Clause challenges in Social Security proceedings, but the recognition of constitutional claims as an exception to prudential exhaustion requirements further supports our conclusion.

Because both the characteristics of this particular administrative scheme and the nature of the claim weigh against implying an exhaustion requirement, we agree with the claimants that their failure to raise the Appointments Clause challenge before the agency does not foreclose their ability to seek judicial review of that claim. Our holding is narrow. Because the inquiry whether to imply an exhaustion requirement depends in part on the nature of the claim presented, we hold only that a claimant does not forfeit an Appointments Clause challenge in a Social Security proceeding by failing to raise that claim before the agency.[5] We do not "opine on any

---

[5]Because our holding is narrow, we disagree with the Commissioner that our ruling would greatly burden the SSA. *See Cirko*, 948 F.3d at 159 (noting that, because of the procedural rules governing the timeline for seeking review of an ALJ's decision, "[t]he effect of our decision today, then, is limited to the hundreds (not hundreds of thousands) of claimants whose cases are already pending in the district courts, a drop in the bucket relative to the thousands of claims that the SSA has voluntarily ordered (and thus apparently has the resources enabling) the [SSA] to review"). We also disagree with the Commissioner's broader argument that such a rule would encourage "sandbagging" by allowing a claimant to sit on an Appointments Clause challenge and only raise it in district court should the claimant suffer an adverse decision before the agency. As an initial matter, the Commissioner's ratification of SSA ALJs has cured any Appointments Clause problem with SSA ALJs, so the Commissioner's argument must refer instead to Appointments Clause challenges to ALJs of other administrative agencies. As we have explained, however, whether an implied exhaustion requirement is appropriate depends in part upon the specific administrative scheme at issue. Therefore, our holding today in no way decides whether a similar result would be appropriate for Appointments Clause challenges to the ALJs of other administrative agencies. In *Sims*, the Court wrote that "[a]lthough the question is not before us, we think it likely that the Commissioner could adopt a regulation that did require issue exhaustion." 530 U.S. at 108. The agency's decision not to impose such a

issue-exhaustion requirement in this context beyond Appointments Clause challenges, as that is the question before us today." *Cirko*, 948 F.3d at 153 n.3.

B.

In *Lucia*, the Supreme Court held that the SEC's ALJs are inferior officers who must be appointed consistently with the Appointments Clause in part because they hold "continuing office[s] established by law" and exercised "significant discretion when carrying out . . . important functions." 138 S. Ct. at 2053 (quotations omitted). The Commissioner has not contested—either here or before the Third, Eighth, or Tenth Circuits—the merits of the claimants' argument that SSA ALJs are also inferior officers who were required to be, but were not, appointed consistently with that clause. Because the Commissioner has effectively "conceded the premise," *Cirko*, 948 F.3d at 152, claimants are entitled to the remedy that *Lucia* held was appropriate: a new hearing before ALJs other than the ALJs who conducted their original hearings.

III.

For the foregoing reasons, we **VACATE** the judgments of the district courts and **REMAND** these cases to the Social Security Administration for new hearings before ALJs other than the ALJs who presided over claimants' original hearings.

---

requirement in the twenty years since *Sims* was decided does not persuade us that it is prudent for us to imply an unwritten exhaustion requirement for Appointments Clause challenges now.

———————————

**DISSENT**

———————————

SILER, Circuit Judge, dissenting.  In spite of a very engaging and thoughtful majority opinion, I respectfully dissent.  I would find that the claimants for benefits from the Social Security Administration (SSA) were obligated to assert their objections to the Administrative Law Judges (ALJs) at or before the time of the ALJ hearing and their failure to assert those objections constitutes a forfeiture of their challenges to the legal authority of the ALJs to preside in the case.  Thus, when the cases came before the district court on appeal from the ALJs, claimants were precluded from objecting to the legality of the ALJs.  As the majority explains, other circuits have considered this exact issue.  I choose to follow the reasoning from *Carr v. Comm'r*, 961 F.3d 1267, 1274-76 (10th Cir. 2020), and *Davis v. Saul*, 963 F.3d 790, 794-95 (8th Cir. 2020).

I agree with the analysis of the majority that from *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 745-46 (6th Cir. 2019), there is a three-step procedure to analyze the question before us.  That is basically the same test from *Jones Brothers, Inc. v. Sec'y of Lab.*, 898 F.3d 669, 673-77 (6th Cir. 2019).  *Island Creek* was different because, there, a regulation required the parties to file petitions for review identifying "specific issues to be considered by the Board." 937 F.3d at 749 (citation omitted).  As recognized by the majority, the decision in *Sims v. Apfel*, 530 U.S. 103 (2000), is significant to this decision, but there was no majority decision which controls this case.  The concurring opinion from Justice O'Connor is considered the most cited part of the fractured opinion, but the majority here admits that *Sims* does not control our present case, because *Sims* involved whether issue exhaustion is required at the Appeals Council.

I would follow the reasoning in *Carr*.  As *Carr* indicates, the Social Security ALJs must notify claimants of the specific issues to be decided at each hearing, pursuant to 20 C.F.R. § 404.938(b)(1), but the court decided that the exhaustion of the Appointments Clause challenges "is necessary even without a statutory or regulatory requirement."  *Carr*, 961 F.3d at 1275 n.7. I agree with the conclusions in *Carr* and *Davis* that the exhaustion requirement promotes both

judicial and agency efficiency. Had the claimants raised the question at the ALJ level, the Commissioner could have quickly rectified the problem and avoided the situation we have here, that is, having to rehear all cases after the proper appointments of the ALJs.

Unlike the majority, I am concerned that not requiring exhaustion would encourage "sandbagging." *See Carr*, 961 F.3d at 1275 n.9; *Davis*, 963 F.3d at 795. Failing to object at the ALJ level allows the claimant to get two bites at the apple. The wiley lawyer knows that she can let the case proceed through the administrative level. If the claimant receives benefits, then the lawyer need not object to the appointment of the ALJ. However, if the claimant loses at the ALJ level, that lawyer would raise the issue before the district court, forcing a new hearing before another ALJ.

I respectfully dissent and would affirm the district court.