**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

19-1772
_____

ANDREW M. CIRKO, on behalf of
Sandra L. Cirko, Deceased

v.

COMMISSIONER OF SOCIAL SECURITY,
                              Appellant
_____

19-1773
_____

JOHN STEVEN BIZARRE, JR.

v.

COMMISSIONER SOCIAL SECURITY,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 1-17-cv-00680, 1-18-cv-00048)
District Judge:  Honorable Christopher C. Conner
_____

Argued November 13, 2019

Before: AMBRO, KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: January 23, 2020)

Daniel J. Aguilar, Esq.
United States Department of Justice
Civil Division
Room 7266
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Joshua M. Salzman [ARGUED]
United States Department of Justice
Room 7258
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
        *Counsel for Appellant*

Thomas D. Sutton [ARGUED]
Leventhal Sutton & Gornstein
3800 Horizon Boulevard
Suite 101
Trevose, PA 19053
        *Counsel for Appellee*

---

## OPINION OF THE COURT

---

KRAUSE, *Circuit Judge*.

This case presents the question whether claimants for Social Security disability benefits must exhaust Appointments Clause challenges before the very administrative law judges (ALJs) whose appointments they are challenging. Because both the characteristics of the Social Security Administration (SSA) review process and the rights protected by the Appointments Clause favor resolution of such claims on the merits, we hold that exhaustion is not required in this context and therefore will affirm.

## I.    BACKGROUND

The facts here are simple. After Appellees'—Andrew M. Cirko (on behalf of his late wife Sandra L. Cirko) and John Steven Bizarre—disability claims were denied by ALJs employed by the Social Security Administration, the Supreme Court held in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that ALJs in the Securities and Exchange Commission (SEC) exercised "significant discretion" in carrying out "important functions" and were therefore required under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, to be appointed by the President, a court of law, or a head of department. *Id.* at 2053 (citation omitted). Because the ALJs of the SEC were not so appointed, the petitioner there was entitled to a new hearing before a different constitutionally appointed ALJ. *See id.* at 2055.

When *Lucia* was decided, Appellees here were already in the process of challenging the SSA's denial of their claims in the District Court, and although they had not previously raised this claim, they immediately demanded new hearings on the ground that the ALJs of the SSA were likewise unconstitutionally appointed. In response to *Lucia* and in light of an executive order concluding that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause," Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018), the Acting Commissioner of Social Security conceded the premise and in short order reappointed the agency's administrative judges, including both the ALJs and the Administrative Appeals Judges (AAJs) of the SSA's Appeals Council, under her own authority.[1] Nonetheless, the Commissioner argued that Appellees were not entitled to relief because they had not previously presented their Appointments Clause challenges to their ALJs or the Appeals Council and thus had not exhausted those claims before the agency.

In a comprehensive and analytically rigorous opinion, the District Court declined to require exhaustion, vacated the agency's decisions, and remanded for new hearings before different, properly appointed ALJs. The Commissioner now appeals.

---

[1] Acting Commissioner Nancy Berryhill, who took these actions, was replaced by Commissioner Andrew Saul on June 17, 2019. *See Commissioner*, Soc. Sec. Admin., https://www.ssa.gov/agency/commissioner.html (last visited Dec. 28, 2019). Commissioner Saul represents the agency here.

4

## II.     DISCUSSION[2]

The Commissioner's appeal requires us to decide whether SSA claimants may raise Appointments Clause challenges in federal court without having exhausted those claims before the agency.  The Commissioner argues, based on Supreme Court case law and our precedent, that the general rule of exhaustion applies in these circumstances so the District Court should have dismissed Appellees' appeals.[3]     As explained below, we disagree.

---

[2] The District Court had jurisdiction under 42 U.S.C. § 405(g).  We have appellate jurisdiction under 28 U.S.C. § 1291.  We review the District Court's legal rulings de novo. *Schaudeck v. Comm'r of Soc. Sec. Admin*, 181 F.3d 429, 431 (3d Cir. 1999).

[3] We use "exhaustion" in this opinion to mean issue exhaustion, i.e., a requirement that claimants "raise specific issues . . . to reserve them for review in federal court." *Sims v. Apfel*, 530 U.S. 103, 113 (2000) (O'Connor, J., concurring in part and concurring in the judgment).  Like the Court in *Sims*, which also addressed issue exhaustion, we rely upon *McCarthy* for guidance, *id.*, even though *McCarthy* dealt with the issue of administrative exhaustion—i.e., the rule warning claimants that "completely failing" to seek relief through the agency process will "forfeit the right to seek judicial review," *id.* (citing 20 C.F.R. § 404.900(b)).  Nothing in this opinion, however, should be taken to suggest that SSA claimants are relieved entirely from the administrative-exhaustion requirement so understood, nor do we opine on any issue-

The Commissioner concedes that there is no statutory or regulatory exhaustion requirement that governs SSA proceedings. Thus, whether we should impose an exhaustion requirement here "is a matter of sound judicial discretion." *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980). To determine whether to impose an exhaustion requirement where we have not done so before, we must assess (a) the "nature of the claim presented," (b) the "characteristics of the particular administrative procedure provided," and (c) the proper "balance [between] the interest of the individual in retaining prompt access to a federal judicial forum [and] countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). As explained below, each of these three considerations supports the conclusion that exhaustion of Appointments Clause claims is not required in the SSA context.

## A. The Nature of Appointments Clause Claims Does Not Favor Exhaustion

We begin with the "nature of [Appellees'] claim." *See McCarthy*, 503 U.S. at 146. As a general matter, exhaustion is appropriate for certain claims involving "exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* at 145. But exhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of

---

exhaustion requirement in this context beyond Appointments Clause challenges, as that is the question before us today.

separation of powers. *Glidden Co. v. Zdanok*, 370 U.S. 530, 536–37 (1962).

The importance of the Appointments Clause has been recognized since our nation's founding. In the colonial system, appointments were distributed in "support of a despicable and dangerous system of personal influence," *The Federalist No. 77*, at 421 (Alexander Hamilton) (E.H. Scott ed., 1894), that enabled officers to "harass our people, and eat out their substance," *The Declaration of Independence* para. 12 (U.S. 1776). Indeed, the "power of appointment to offices" was seen in the Founding Era as "the most insidious and powerful weapon of eighteenth century despotism." *Freytag v. Comm'r*, 501 U.S. 868, 883 (1991) (quoting Gordon S. Wood, *The Creation of the American Republic 1776–1787* 79, 143 (1969)). By requiring that all "Officers of the United States" be appointed by the president, a head of department, or a court of law, *see* U.S. Const. art. II, § 2, cl. 2, our Founders sought to replace that "despicable and dangerous system," *The Federalist No. 77*, *supra*, at 421, with one that favored political accountability and neutrality, and our Supreme Court has upheld the protection of the Clause in various cases for the express purpose of "protec[ting] individual liberty," *NLRB v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring) (citation omitted), and upholding the "principle of separation of powers," *Buckley v. Valeo*, 424 U.S. 1, 121 (1976).

An individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation. As the D.C. Circuit has noted, "it will often be difficult or impossible for someone subject to a wrongly designed scheme[, including an Appointments Clause violation,] to show that the design—the structure—played a causal role in his loss." *Landry v.*

7

*FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000). But this difficulty to show direct harm does not diminish the important individual liberty safeguarded by the Appointments Clause. Such harm is presumed.

Two cases recognizing these principles, *Lucia* and *Freytag*, bear heavily on our decision today. In *Lucia*, where the Court held that the ALJs of the SEC were unconstitutionally appointed, it ordered the agency to provide the petitioner with a new hearing before a constitutionally appointed ALJ different from the original ALJ, explaining that the petitioner had made a "timely challenge" by contesting the validity of the ALJ's appointment at the agency appeals level—though not, apparently, before the ALJ himself. 138 S. Ct. at 2053–54, 55. And while the *Lucia* Court did not expound on what made the challenge "timely," it did cite *Freytag*, where the Court had declined to enforce exhaustion in the Appointments Clause context. *See id.* at 2053–54 (citing *Freytag*, 501 U.S. at 871–82).

In *Freytag*, the petitioners not only "fail[ed] to raise a timely objection to the assignment of their cases to [the] judge" they claimed was unconstitutionally appointed, but they also affirmatively "consent[ed] to the assignment." 501 U.S. at 878. "[A]s a general matter," the Court acknowledged, "a litigant must raise all issues and objections at trial." *Id.* at 879. Yet, it explained, "the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome . . . the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers." *Id.* (internal quotation marks and citation omitted). And given the strength of that interest in an Appointments Clause claim, the Court excused exhaustion and heard the challenge on the merits. *Id.* at 880.

8

As the Commissioner here emphasizes, neither *Lucia* nor *Freytag* map perfectly onto our case: The former addressed a different agency and a claimant who raised the Appointments Clause challenge at least on administrative appeal, 138 S. Ct. at 2050; and the latter also addressed a different agency, and it excused the petitioner's failure to exhaust rather than holding that there was no exhaustion requirement in the first instance, 501 U.S. at 878–80. But these cases guide us as we chart our course by instructing that Appointments Clause challenges—given their importance to separation of powers and, ultimately, individual liberty—are claims for which a hearing on the merits is favored.

## B. The Characteristics of SSA Review Counsel Against Requiring Exhaustion for This Claim

We turn next to the "characteristics of the particular administrative procedure provided here." *McCarthy*, 503 U.S. at 146. We are guided by the teaching of *Sims v. Apfel*, 530 U.S. 103 (2000), the Supreme Court's most recent pronouncement on issue exhaustion in SSA proceedings.

In *Sims*, the Supreme Court resolved a question closely analogous to this one: whether claimants must exhaust issues before the SSA's Appeals Council to obtain judicial review of those claims. *See* 530 U.S. at 107 (plurality opinion); *id.* at 113 (O'Connor, J., concurring in part and concurring in the judgment). The Court based its holding on two unusual features of the SSA review process: first, the Court emphasized that because no SSA regulations required exhaustion to the Appeals Council, imposing an "additional requirement[]" of exhaustion would penalize claimants who did "everything that the agency asked," *see id.* at 114 (O'Connor, J., concurring in part and concurring in the judgment); second, the Court

9

explained that the inquisitorial nature of Appeals Council hearings rendered the case for exhaustion "much weaker" because the AAJs did not rely upon the parties "to develop the issues in an adversarial administrative proceeding" anyway, *see id.* at 109–10 (plurality opinion).[4]   For those reasons together, the Court declined to require claimants to exhaust claims before the Appeals Council.[5]   *See id.* at 109–10 (plurality opinion).  The Court noted, however, that "[w]hether a claimant must exhaust issues before [an] ALJ is not before us," leaving that question for a case in which it was squarely presented.  *Id.* at 107 (plurality opinion).

---

[4] The Court here consisted of the plurality plus Justice O'Connor's concurrence.  *See* 530 U.S. at 104.  Under the rule of *Marks v. United States*, 430 U.S. 188, 193–94 (1977) (holding that the narrowest opinion of a fragmented Court controls), Justice O'Connor's analysis—which joined the portions of the plurality's opinion cited here—controls.  *See Sims*, 530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the judgment) (joining Parts I and II-A of plurality opinion).

[5] As discussed further below, *see infra* n.11, these unique characteristics of the SSA, particularly the lack of any statutory or regulatory issue-exhaustion requirements, are what separate this case from other post-*Lucia* decisions holding that plaintiffs' Appointments Clause challenges to ALJs of other agencies are forfeited because they failed to raise them before the agency.  *See, e.g.*, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746, 749 (6th Cir. 2019) (Department of Labor); *Malouf v. SEC*, 933 F.3d 1248, 1258 (10th Cir. 2019) (SEC).

That is the case before us today as concerns Appointments Clause challenges. And while *Sims* does not dictate the answer, its lessons loom large. Like Appeals Council hearings, ALJ hearings have no express exhaustion requirement.[6] *See, e.g.*, *McWilliams v. Berryhill*, No. 18-5180, 2019 WL 2615750, at *8 (E.D. Pa. June 26, 2019) ("No matter how tortured the reading, the SSA regulations fail to squarely address [exhaustion]."). And like Appeals Council hearings, ALJ hearings are inquisitorial and driven by the agency rather than the claimant: Whereas ALJs must "look[] fully into the issues," "[a]ccept[] as evidence any documents that are material to the issues," and "decide when the evidence will be presented and when the issues will be discussed," 20 C.F.R. § 404.944, claimants need not even state their case or present written arguments, *see id.* § 404.949. The two rationales driving *Sims* thus generally apply to ALJs no less than AAJs, so the "characteristics of the particular administrative procedure provided here," *McCarthy*, 503 U.S. at 146, likewise cut against an exhaustion requirement for Appointments Clause challenges.

## C. A Balancing of the Individual and Governmental Interests Weighs Against Exhaustion

With these points in mind, we turn to our ultimate task of "balanc[ing] the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. This consideration too counsels against an exhaustion requirement.

---

[6] The Commissioner concedes this point.

11

### 1. The Individual Interest Is High

We begin with the individual interest. As we have explained, the Appointments Clause is aimed at more than an abstract division of labor between the branches of government: "The structural principles secured by the separation of powers protect the individual as well," *Bond v. United States*, 564 U.S. 211, 222 (2011), so a citizen's ability to enforce it through a merits hearing is critical to "protec[ting] individual liberty," *Noel Canning*, 573 U.S. at 571 (Scalia, J., concurring). Yet that ability would be severely compromised in two respects were exhaustion required here.

First, an exhaustion requirement for Appointments Clause claims would impose an unprecedented burden on SSA claimants who are subject, not to an adversarial process, but to an inquisitorial review process. While exhaustion may be broadly required in an agency where "it is usually 'appropriate under [the agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there," *Sims*, 530 U.S. at 109 (alteration in original) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952)), the SSA's inquisitorial system does not fit that description. In the SSA, "[t]he [agency], not the claimant, has primary responsibility for identifying and developing the issues," *Sims*, 530 U.S. at 112, such that the ALJ takes "an active investigatory role" and "shoulders a statutory obligation to obtain evidence," "to order medical testing," and "to request witnesses," Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1303 (1997). And while the ALJ plays a starring role— authorized even to subpoena witnesses of their own accord,

20 C.F.R. § 404.950(d)—the claimant may choose to play a bit part and still have his claim determined. After all, claimants are not required to develop facts, let alone make legal arguments. *See* Dubin, *supra*, at 1302–04. Requiring exhaustion in this case would upend this arrangement by forcing claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture.

Second, an exhaustion requirement would prejudice those claimants who go unrepresented at their ALJ hearings and then, perhaps with the benefit of counsel, seek to raise such a claim in federal court.[7] These *pro se* claimants already face "a disadvantage in the unfamiliar world of law because they lack the specialized training of attorneys" and struggle to recognize technical legal claims like the Appointments Clause claims here.[8] *Pilgrim v. Littlefield*, 92 F.3d 413, 418 (6th Cir. 1996). Requiring exhaustion would make the consequences of

---

[7] Notably, a large percentage—roughly thirty percent—of claimants go unrepresented at their ALJ hearings. *See Social Security Administration (SSA) Annual Data for Representation at Social Security Hearings*, Soc. Sec. Admin. (May 23, 2018), https://www.ssa.gov/open/data/representation-at-ssa-hearings.html.

[8] *See also Faretta v. California*, 422 U.S. 806, 835 (1975) (noting "the dangers and disadvantages of self-representation"); *Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir. 2011) ("*Pro se* pleadings are often submitted by individuals with limited skills and technical expertise in the law.").

that disadvantage irreparable by precluding these claimants from vindicating their rights under the Appointments Clause in federal court proceedings. And we have little reason to think those rights will elsewhere be vindicated: While ALJs must probe for meritorious arguments more carefully where claimants are unrepresented, *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003), even the most diligent ALJ is unlikely to raise a *sua sponte* objection to his own appointment.

The need to protect those individual rights is especially acute, however, where, as here, claimants' "physical condition and dependency on the disability benefits" are at issue. *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976). Disability benefits are usually claimants' primary source of income[9]—highlighting the need for both the appearance and reality of fair adjudicators appointed impartially under the Appointments Clause and making the "nature of [a disability] claim" an "important factor[]" in determining whether to take federal jurisdiction over a procedurally flawed administrative appeal, *id.* at 331 n.11. Indeed, we have said that in such cases "the claimant's interest in having the constitutional issue resolved promptly is so great that further deference to agency procedures is inappropriate." *Mattern v. Mathews*, 582 F.2d 248, 253 (3d Cir. 1978).

In short, the individual interest in Appellees' Appointments Clause challenge being heard on the merits is high, and an exhaustion requirement would seriously erode it.

---

[9] *See* Michelle Stegman Bailey & Jeffrey Hemmeter, *Characteristics of Noninstitutionalized DI and SSI Program Participants, 2010 Update*, tbl. 4 (2014).

14

2.  The Governmental Interest Is Low

The Government's interest in requiring exhaustion here, on the other hand, is negligible at best. Traditionally, two governmental interests favor exhaustion: deference to agency expertise and opportunity for agency error correction. Neither is implicated here.

The first, deference to agency expertise, is rendered irrelevant here by the well-worn maxim that constitutional questions, including Appointments Clause challenges, are "outside the [agency's] competence and expertise."[10] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 (2010). "[C]ourts are at no disadvantage in answering" Appointments Clause claims, *id.*, and the

---

[10] The Commissioner cites *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), for the proposition that claimants must exhaust constitutional challenges even if the agency lacks authority to decide them. But that argument relies upon a patent misreading of *Elgin*, which neither dealt with exhaustion nor remarked upon the agency's competence to hear constitutional claims. *See id.* at 16–17. The Commissioner also contends that the Appointments Clause challenge here is not materially different than a claim for an ALJ's recusal, which we held in *Ginsburg v. Richardson*, 436 F.2d 1146 (3d Cir. 1971), was waived when it had not been raised before the agency. *Id.* at 1152. But in *Ginsburg* the claimant failed to follow the "proper procedure" provided by agency regulations for seeking recusal, and that relief, had she followed the procedure, was one the ALJ was capable of providing. *Id.* at 1152, 1152 n.4. That is not the case here, so *Ginsburg* does not control.

Commissioner therefore has no legitimate basis to argue that agency expertise requires that those claims be exhausted before the agency.

The second traditional rationale for exhaustion is no more applicable. We need not give an agency the opportunity for error correction that it is incapable of providing—i.e., where it is not "empowered to grant effective relief." *See McCarthy*, 503 U.S. at 147. This case falls squarely in that category: At neither the trial nor the appellate levels could the SSA's administrative judges cure the constitutionality of their own appointments, whether by reappointing themselves, *see Lucia*, 138 S. Ct. at 2051 (explaining that "the President, a court of law, or a head of department" must appoint ALJs), or by transferring the case to a constitutionally appointed ALJ, *see* Appellant's Br. 6 (conceding that all SSA ALJs were unconstitutionally appointed prior to *Lucia*).

The Commissioner urges an error-correction theory whereby ALJs presented with an Appointments Clause challenge might "note[] their concerns regarding the constitutionality of their appointments" to the Commissioner, eventually "enabling the Commissioner to take corrective action." Appellant's Br. 21 (citing *L.A. Tucker*, 344 U.S. at 36–37). But the Supreme Court rejected this exact argument in *Mathews v. Eldridge*, where it observed that "[i]t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context," particularly as "[t]he Secretary would not be required even to consider such a challenge." 424 U.S. at 330; *see also McNeese v. Bd. of Educ.*, 373 U.S. 668, 675–76 (1963) (refusing to require state-court exhaustion where theory of relief there was "tenuous"). So too

16

here, where the Commissioner himself concedes that claimants have "no access . . . to the [C]ommissioner directly."[11] Tr. 7:4–6. Thus, the only avenues then available to claimants to seek a remedy—hearings before ALJs or AAJs—were incapable of providing it, and we decline to adopt the Commissioner's attenuated and speculative theory of relief.[12]

---

[11] That alone distinguishes this case from the out-of-Circuit authority on which the Commissioner relies where the challengers, in fact, could have obtained relief from the agency. That is true of both the SSA cases he cites outside the Appointments Clause context, *see Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (challenge to vocational expert's methods); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (challenge to evidentiary ruling); *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (same), and the Appointments Clause cases he cites outside the SSA context, *see Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 677 (6th Cir. 2018); *In re DBC*, 545 F.3d 1373, 1379 (Fed Cir. 2008). But it is not true here, at the intersection of those two spheres, where the only agency actors to whom the challengers had access—the administrative judges themselves—lacked authority to provide a remedy.

[12] We note the likely futility of claimants raising such concerns in those venues because the SSA was aware that the ALJ appointments might be rendered unconstitutional by the Supreme Court yet declined to take corrective action until well after *Lucia* was decided. *See* Soc. Sec. Admin., EM-18003: *Important Information Regarding Possible Challenges to the*

Unable to invoke either of the two traditional exhaustion rationales, the Commissioner asserts a third: that an adverse ruling would open the floodgates to the "many hundreds of cases in federal district courts in which disappointed claimants have sought to raise unpreserved Appointments Clause challenges for the first time." Appellant's Br. 27. And those cases, we are told, are "just the tip of the iceberg" because ALJs issued 493,000 appealable dispositions in fiscal year 2018 and, without an exhaustion requirement, "every disappointed claimant could obtain a do-over before a new ALJ simply by raising a *Lucia* claim in district court." Appellant's Br. 28.

But we deal in facts, not hyperbole, and, on inspection, the purported flood is actually a trickle. Under the applicable procedural rules, claimants must appeal the Appeals Council's decision to the District Court within sixty days, 42 U.S.C. § 405(g), and *Lucia* was decided more than a year ago, 138 S. Ct. at 2044. That means every claimant whose benefits were denied prior to *Lucia* has long since either filed an appeal in district court or become time-barred from doing so. Those whose claims were still at the initial stage will have their claims adjudicated by a constitutionally appointed ALJ. And the SSA, in the meantime, has promulgated administrative guidance instructing that claimants with cases then pending on administrative appeal would have their claims reviewed *de novo* before the now-duly-appointed Appeals Council.[13] The

*Appointment of Administrative Law Judges in SSA's Administrative Process* 1–2 (effective Jan. 30, 2018).

[13] *See* SSR 19-1p; Titles II & XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission*

18

effect of our decision today, then, is limited to the hundreds (not hundreds of thousands) of claimants whose cases are already pending in the district courts, a drop in the bucket relative to the thousands of claims that the SSA has voluntarily ordered (and thus apparently has the resources enabling) the Appeals Council to review.

In sum, there is little legitimate governmental interest in requiring exhaustion here. And, as we have explained, the individual interests on the other side of the ledger are substantial. For those reasons, and considering the special character of both the agency and the constitutional claim at issue, we decline to require exhaustion.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court and remand these consolidated cases to the Social Security Administration for new hearings before constitutionally appointed ALJs other than those who presided over Appellees' first hearings.

---

*(SEC)* On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582–9583 (Mar. 15, 2019).