**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1529**

LISA PROBST,

      Plaintiff - Appellee,

  v.

ANDREW SAUL, Commissioner of Social Security,

      Defendant - Appellant.

**No. 19-1531**

SHARRON BRADSHAW,

      Plaintiff - Appellee,

  v.

ANDREW SAUL, Commissioner of Social Security,

      Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. James E. Gates and Robert T. Numbers II, Magistrate Judges. (5:18-cv-00130-JG; 5:18-cv-00100-RN)

Argued: September 10, 2020      Decided: November 20, 2020

Before KEENAN, WYNN, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the majority opinion, in which Judge Keenan joined. Judge Richardson wrote an opinion concurring in the judgment.

**ARGUED:** Daniel Aguilar, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Charlotte W. Hall, ARROWOOD & HALL, PLLC, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Joshua M. Salzman, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

WYNN, Circuit Judge:

Plaintiffs-Appellees Lisa Probst and Sharron Bradshaw unsuccessfully applied for Social Security disability benefits. After pursuing administrative appeals within the Social Security Administration, they sought judicial review in federal district court.

While their cases were pending, the Supreme Court issued its opinion in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). *Lucia* elucidated a possible constitutional objection to administrative proceedings pursuant to the Appointments Clause. But neither Probst nor Bradshaw had raised that objection before the Social Security Administration.

In this appeal, we are tasked with determining whether Probst and Bradshaw may raise an Appointments Clause challenge in federal court that they did not preserve before the agency. We agree with the courts below that claimants for Social Security disability benefits do not forfeit Appointments Clause challenges by failing to raise them during their administrative proceedings. Accordingly, we affirm.

I.

Bradshaw and Probst commenced their applications for Social Security disability benefits before the Social Security Administration ("SSA") in 2013 and 2014, respectively. State disability agencies denied their claims, Administrative Law Judges ("ALJs") upheld the denials, and the SSA's Appeals Council declined to reconsider the decisions. At that point, in March 2018, Probst and Bradshaw each turned to federal district courts.

Three months later, however, the Supreme Court held that ALJs employed by the Securities and Exchange Commission were "inferior" "Officers of the United States"—not

3

"simply employees of the Federal Government"—for purposes of the Appointments Clause of the Constitution. *Lucia*, 138 S. Ct. at 2051 & n.3, 2055. The Appointments Clause mandates that such "Officers" be appointed by the President, or if permitted by Congress, by a court or a department head. U.S. Const. art. II, § 2, cl. 2; *see Lucia*, 138 S. Ct. at 2051 n.3 (describing the distinction between "principal" and "inferior" officers). Because the ALJ in *Lucia* had not been so appointed, the Court concluded that the petitioner there was entitled to a new hearing before a different, validly appointed ALJ. *Lucia*, 138 S. Ct. at 2055.

Following *Lucia*, Probst and Bradshaw argued—for the first time—that they, too, deserved new hearings because the ALJs who reviewed their claims were also improperly appointed. The Commissioner of Social Security[1] objected on exhaustion grounds, arguing that Probst and Bradshaw had forfeited their Appointments Clause challenges by failing to raise them during their agency proceedings—even though those proceedings concluded before the Supreme Court issued its opinion in *Lucia*.[2]

The district courts rejected the Commissioner's argument and declined to require exhaustion. Accordingly, the courts granted judgments on the pleadings to Probst and

---

[1] Acting Commissioner of Social Security Nancy Berryhill was the original named defendant in these cases. She has since been replaced by Commissioner Andrew Saul, who represents the agency here. For present purposes, we use the shorthand "Commissioner" to refer to both.

[2] The Commissioner does not dispute that, at the time of Probst and Bradshaw's administrative proceedings, the SSA's ALJs needed to be—but were not—appointed consistent with the Appointments Clause. *See* Opening Br. at 12 n.2.

Bradshaw and, in line with *Lucia*, remanded their cases to the SSA for new hearings before different, properly appointed ALJs. The Commissioner timely appealed.

## II.

"In most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court." *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (O'Connor, J., concurring in part and concurring in the judgment). And for good reason. Among other virtues, issue-exhaustion requirements preserve agency autonomy and foster judicial economy. *See McCarthy v. Madigan*, 503 U.S. 140, 144–46 (1992); *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297–98 (D.C. Cir. 2004). But there are circumstances under which this general rule need not apply, "even where administrative and judicial interests would counsel otherwise." *McCarthy*, 503 U.S. at 146. We hold that this is one such case.

We are not alone in reaching this conclusion. Four Courts of Appeals have considered the specific question before us: whether Social Security applicants must administratively exhaust Appointments Clause challenges to the authority of the very ALJs assessing their claims. The Third and Sixth Circuits have declined to require exhaustion in this context. *See Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020); *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). The Eighth and Tenth Circuits have held the opposite. *See Davis v. Saul*, 963 F.3d 790 (8th Cir. 2020); *Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020). We join the Third and Sixth Circuits in concluding that imposing an exhaustion requirement here would be inappropriate.

Issue-exhaustion requirements are "largely creatures of statute." *Sims*, 530 U.S. at 107. Where Congress has codified an exhaustion requirement—such as in 15 U.S.C. § 78y(c)(1), which provides that "[n]o objection to an order or rule of the [Securities and Exchange] Commission . . . may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so"—courts generally defer to that choice. *See, e.g.*, *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665 (1982); *Washington Ass'n for Television & Child. v. FCC*, 712 F.2d 677, 681–82 & n.6 (D.C. Cir. 1983). Likewise, where an agency has adopted an issue-exhaustion requirement in the regulations governing its internal review process, courts customarily "ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Sims*, 530 U.S. at 108; *see also Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019). However, when neither a statute nor a regulation speaks to exhaustion in the relevant context, the decision of whether to impose such a requirement is left to "sound judicial discretion." *See McCarthy*, 503 U.S. at 144.

The Commissioner concedes that there are no statutes or regulations requiring issue exhaustion in Social Security proceedings. *See* Oral Arg. at 8:43, 9:24; Opening Br. at 19; Reply Br. at 7. Nor have we located any such authority.[3]

---

[3] The strongest candidates are 20 C.F.R. §§ 404.939 and 404.940, but they fall short. Section 404.939 requires claimants to "notify the administrative law judge . . . at the earliest possible opportunity" if they "object to the issues to be decided at [their] hearing[s]." 20 C.F.R. § 404.939. However, "the issues" referenced therein are those that the SSA has already determined will be heard, *see id.* § 404.938(b)(1), and there is no suggestion that a claimant's failure to raise a *new* issue will lead to forfeiture down the road. Section 404.940 provides that a claimant who "object[s] to the administrative law judge who will conduct

6

The question, then, is whether to imply and enforce an exhaustion requirement that neither Congress nor the SSA itself has seen fit to impose. For guidance, we look to the Supreme Court's framework outlined in *McCarthy v. Madigan*, which instructs us to balance "the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." 503 U.S. at 146. This balancing is meant to be "intensely practical," and we are to give special attention to "the nature of the claim presented" and "the characteristics of the particular administrative procedure provided." *Id.* We conclude that the balance tips against requiring exhaustion of Appointments Clause challenges in the Social Security context.[4]

---

[her] hearing . . . must notify the administrative law judge at [her] earliest opportunity." *See id.* § 404.940. Theoretically, that language could encompass Appointments Clause challenges. But, read in context, the regulation clearly strikes at allegations of bias or special interest, rather than an ALJ's constitutional status.

[4] We note that we are unconvinced by the Commissioner's argument that *Lucia* itself imposed a general exhaustion requirement for Appointments Clause challenges. In *Lucia*, the Supreme Court explained that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). The petitioner there "made just such a timely challenge" by first contesting the validity of his ALJ's appointment before the SEC. *Id.* The Commissioner argues that this language imposes "an important limitation" on Appointments Clause challenges—specifically, that *only* those challenges raised before the agency itself may be considered "timely." *See, e.g.*, Opening Br. at 12–13. But we decline to read a categorical exhaustion requirement into what appears to be nothing more than the Supreme Court's stating the obvious. Where issue exhaustion *is* required—whether by statute, by regulation, or by judicial imposition— then a claimant who fails to raise her argument before the agency generally will be out of luck. Such a requirement existed in *Lucia*, as exhaustion before the SEC is mandated by statute. *See* 15 U.S.C. § 78y(c)(1). By contrast, where issue exhaustion is *not* required, an objection raised in judicial proceedings in the first instance cannot be said to be untimely.

## A.

We begin our balancing analysis by examining the "nature of [Probst and Bradshaw's] claim[s]." *Id.* The ordinary concerns favoring exhaustion "apply with particular force" when the claim at issue implicates the agency's "special expertise" or "discretionary power." *Id.* at 145. Indeed, the Commissioner directs us to several Social Security cases in which courts have enforced implied exhaustion requirements for claims that were clearly within the agency's competency to resolve. For example, in *Anderson v. Barnhart*, a claimant argued that the ALJ hearing his case erred by failing to consider whether his morbid obesity posed a physical impairment. 344 F.3d 809, 814 (8th Cir. 2003). Because the claimant never raised this argument during agency proceedings, however, the Eighth Circuit held that he had forfeited it. *Id.* Similarly, in *Shaibi v. Berryhill*, the Ninth Circuit held that a represented claimant may not challenge the accuracy of a vocational expert's testimony for the first time in federal court. 883 F.3d 1102, 1109 (9th Cir. 2017).

But the claim presented in this case is of a fundamentally different nature. An Appointments Clause challenge, at bottom, is a "structural," separation-of-powers objection. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878–79 (1991). The judiciary is at least as equipped to evaluate such a claim as the SSA is.[5] Thus, permitting

---

[5] In a passing citation to our decision in *Nationsbank Corp. v. Herman*, 174 F.3d 424 (4th Cir. 1999), the Commissioner suggests that this Court categorically requires "litigants . . . to raise constitutional challenges in agency proceedings if they wish to preserve those claims for judicial review." Reply Br. at 12. But the Commissioner mischaracterizes our statement there, and, in doing so, misses the point. *Nationsbank*

judicial review in the first instance may be appropriate. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010) ("Petitioners' constitutional claims are also outside the [Securities and Exchange] Commission's competence and expertise."); *cf. UC Health v. NLRB*, 803 F.3d 669, 672–73 (D.C. Cir. 2015) (allowing "challenges to the composition of an agency [to] be raised [in the first instance] on review").

Additionally, there was little "discretionary power" to exercise here. *McCarthy*, 503 U.S. at 145. At the time of Probst and Bradshaw's ALJ hearings, *every* SSA ALJ was equally constitutionally invalid. No individual ALJ could have opted to recuse him- or herself to resolve the issue.[6]

Thus, neither the agency's expertise nor its discretion is implicated here, which dampens the impact of the traditional pro-exhaustion rationales. And on the other side of the scale—actively counseling against requiring exhaustion—is the important role the Appointments Clause plays in "preserving liberty" within our system of government. *NLRB v. Noel Canning*, 573 U.S. 513, 570 (2014) (Scalia, J., concurring); *see Cirko*, 948 F.3d at 153–54. We conclude that the "nature of the claim presented" here does not favor exhaustion.

---

simply reiterated that "under our consistent and unambiguous line of cases," constitutional claims are not *per se* exempt from exhaustion requirements. *See* 174 F.3d at 429 (collecting cases).

[6] We will return to the question of whether a claimant's decision to raise an Appointments Clause challenge under these circumstances would have, nevertheless, facilitated systemic change within the agency as a whole. As pertains to the nature of Probst and Bradshaw's claims, however, we note that the agency was without real discretion to address them.

B.

*McCarthy* also asks us to consider the "characteristics of the particular administrative procedure provided." 503 U.S. at 146. The Supreme Court's latest treatment of issue exhaustion in the Social Security context is *Sims v. Apfel*, 530 U.S. at 103.

In a fractured vote, the *Sims* Court declined to require issue exhaustion before the SSA's Appeals Council. Five Justices agreed with the broad proposition that, absent a statute or regulation requiring otherwise, "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109 (plurality opinion); *see also id.* at 113 (O'Connor, J., joining Parts I and II-A of plurality opinion and concurring in the judgment). The Court explained that the rationale undergirding exhaustion is strongest in traditional, adversarial proceedings, where "contestants" before the agency are expected to "develop fully all issues." *Id.* at 109–10 (plurality opinion) (quoting *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952)). But "[w]here, by contrast, an administrative proceeding is *not* adversarial, . . . the reasons for a court to require issue exhaustion are *much weaker*." *Id.* at 110 (emphasis added).

Writing only for a plurality, Justice Thomas went on to conclude that the non-adversarial nature of Social Security proceedings is "quite clear" and that, therefore, requiring issue exhaustion before the Appeals Council "ma[de] little sense." *Id.* at 111–12 (plurality opinion).

Justice O'Connor wrote separately because, in her view, "the agency's failure to notify claimants of an issue exhaustion requirement in this context [was] a sufficient basis

for [the] decision." *Id.* at 113 (O'Connor, J., concurring in part and concurring in the judgment). Moreover, the SSA's regulations and procedures "affirmatively suggest[ed] that specific issues need not be raised before the Appeals Council"—for example, by telling claimants that "that [they] could request review by . . . filling out a 1–page form that should take 10 minutes to complete." *Id.* at 113–14. To impose an issue-exhaustion requirement against claimants who "did everything that the agency asked" would, in Justice O'Connor's view, be both "inappropriate" and unfair. *See id.*

Justice O'Connor's analysis provides the narrowest grounds for the Court's holding and, therefore, controls. *See Marks v. United States*, 430 U.S. 188, 193–94 (1977). The upshot of *Sims*, then, is that requiring issue exhaustion before the Appeals Council would have been improper because: (1) the non-adversarial nature of Social Security proceedings made the case for exhaustion "much weaker," as five Justices held; and (2) the SSA gave no notice to claimants that they might forfeit an issue by failing to raise it, as Justice O'Connor concluded was determinative.

While *Sims* only considered a narrow question—whether a claimant must exhaust issues before the SSA's Appeals Council—and was careful to state that the present inquiry—"[w]hether a claimant must exhaust issues before [an] ALJ"—was not before it, the Court's reasoning nonetheless applies with considerable force to the question at hand. *Sims*, 530 U.S. at 107.

First, our Court has determined that the SSA "administrative hearing process is not an adversarial one." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). By regulation, SSA ALJs bear a primary and independent responsibility to develop the facts and issues in

11

a non-adversarial fashion. *See, e.g.*, 20 C.F.R. §§ 404.944, 416.1400(b). That automatically makes the argument for exhaustion "much weaker." *Sims*, 530 U.S. at 110.

Second, several aspects of the ALJ review process could actually "mislead the Social Security claimant to believe issue exhaustion is not required." *Id.* at 114 (O'Connor, J., concurring) (quotations omitted). For example, on the standard ALJ hearing-request form, claimants are given a meager four lines to explain why they "disagree" with their initial benefits determination.[7] *See* Form HA-501-U5, https://www.ssa.gov/forms/ha-501.pdf. And at the hearing itself, a claimant "may" state her case in person or in writing—but she isn't required to. *See* 20 C.F.R. § 404.949. This "failure to notify claimants of an issue exhaustion requirement" is "sufficient" to preclude enforcement of such a requirement. *Sims*, 530 U.S. at 113 (O'Connor, J., concurring).

In sum, given the substantial overlap in the administrative schemes governing ALJ hearings and Appeals Council review, *Sims* strongly cautions against requiring exhaustion of Appointments Clause challenges here.

## C.

Finally, to the extent there are individual and institutional interests we have not yet considered, we weigh them here. *McCarthy*, 503 U.S. at 146. Social Security claimants have a lot riding on their applications; modest as they are, disability payments often

---

[7] Justice O'Connor found significant that Form HA-520, which claimants use to request Appeals-Council review, similarly provides "roughly two inches" for claimants to state their issues. *Sims*, 530 U.S. at 113.

comprise most of a beneficiary's income.[8] Accordingly, the individual interest in the fair-hearing protections guaranteed by the Appointments Clause is high. And though we might wonder whether a successful challenge will produce a different outcome on remand, a claimant's "difficulty [in] show[ing] direct harm" or prejudice "does not diminish the important individual liberty safeguarded by the Appointments Clause." *Cirko*, 948 F.3d at 154.

The Commissioner highlights two countervailing institutional interests, neither of which is compelling under the circumstances. First is the agency's interest in self-correction. The current litigation could have been avoided, the Commissioner argues, if individual claimants like Probst and Bradshaw had raised Appointments Clause challenges during their agency proceedings. That would have allowed the SSA to recognize the mounting litigation risk posed by its ALJs' constitutional infirmity sooner, prompting reform. *Cf. L. A. Tucker*, 344 U.S. at 37. As a practical matter, however, that proposition is farfetched. As the Supreme Court has observed, "[i]t is unrealistic to expect that the [Commissioner] would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context." *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976).

So, while "an agency ought to have an opportunity to correct its own mistakes . . . before it is haled into federal court," *McCarthy*, 503 U.S. at 145, that courtesy only extends

---

[8] See Michelle Stegman Bailey & Jeffrey Hemmeter, *Characteristics of Noninstitutionalized DI and SSI Program Participants, 2013 Update*, tbls. 2, 4 (2015), https://www.ssa.gov/policy/docs/rsnotes/rsn2015-02.html.

so far. And here, the SSA's own actions demonstrate that the agency was aware of its looming Appointments Clause problem months before Probst and Bradshaw sought review in district court. In a January 2018 Emergency Message, the SSA instructed its ALJs to acknowledge—but not otherwise discuss or decide—Appointments Clause challenges raised by claimants. *See* SSA, Emergency Message EM-18003 (Jan. 30, 2018). That directive cited two 2016 Court of Appeals decisions dealing with the constitutional status of the SEC's ALJs—that in *Lucia* itself, 832 F.3d 277 (D.C. Cir. 2016), and *Bandimere v. Securities & Exchange Commission*, 844 F.3d 1168 (10th Cir. 2016)—and further noted that "[t]he Department of Justice ha[d] taken the position . . . that the SEC's ALJs are inferior officers" subject to the Appointments Clause. SSA EM-18003. However, the SSA took no further action until the Supreme Court issued its opinion in *Lucia* that summer, at which point the Commissioner ratified the appointments of all the agency's ALJs, thereby validating their constitutional status. *See* 84 Fed. Reg. 9582-02, 9583 (Mar. 15, 2019) ("To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [the SSA's] ALJs and approved those appointments as her own.").

All this is to say that the SSA was in a far better position than individual claimants to recognize "the accumulating risk of wholesale reversals being incurred by its persistence," *L. A. Tucker*, 344 U.S. at 37; did, in fact, recognize that risk; and yet waited

14

to take corrective action.[9] It is hard to imagine that the SSA would have behaved any differently if more claimants like Probst and Bradshaw had raised their Appointments Clause claims before the ALJs.

The second institutional interest relates to the impact of any remanded cases on the broader Social Security system. The Commissioner warns that, unless we require exhaustion, the result will be "severe disruption" as a torrent of claimants choose to pursue "a do-over before a new ALJ." Opening Br. at 28; *see also Carr*, 961 F.3d at 1274 (noting that "the agency is flooded with claimants"); *Davis*, 963 F.3d at 794 (discussing the impact of "hundreds if not thousands of social security claimants" seeking new hearings). The Commissioner does not provide specific numbers, but represents that the "many hundreds of cases" already presenting this issue in federal courts are only "the tip of the iceberg." Opening Br. at 28.

Had this case come before us in July 2018, when the number of potential *Lucia* claimants was at its peak, the volume of probable remands might have weighed more heavily on our analysis. *See McCarthy*, 503 U.S. at 146 ("Application of [exhaustion] balancing . . . is 'intensely practical.'"). But now that the Commissioner has ratified the

---

[9] Although Probst and Bradshaw were represented by counsel at their ALJ hearings, a sizeable number of Social Security claimants proceed *pro se*, or with non-attorney representation. *See* Social Security Administration (SSA) Annual Data for Representation at Social Security Hearings, Soc. Sec. Admin. (May 23, 2018), https://www.ssa.gov/open/data/representation-at-ssa-hearings.html. Whether ALJs are "Officers of the United States" subject to the Appointments Clause is not exactly the stuff of dinner-table conversation; we would not expect most lay applicants to be aware of lurking Appointments Clause issues, let alone raise them before the ALJs presiding over their hearings.

appointments of all ALJs as her own, there are no new Appointments Clause challenges brewing in SSA cases. And because Social Security claimants have only a sixty-day window to appeal an Appeals Council decision to a district court, all claimants whose benefits were denied before the Commissioner's July 2018 ratification of the SSA's ALJs have "long since either filed an appeal in district court or become time-barred from doing so." *Cirko*, 948 F.3d at 159 (citing 42 U.S.C. § 405(g)). In other words, even if the Commissioner is correct that there are "many hundreds of [these] cases in federal district courts," those cases represent *all* such claims, not the "tip of the iceberg." Opening Br. at 28; *see Cirko*, 948 F.3d at 159 ("The effect of our decision today, then, is limited to the hundreds (not hundreds of thousands) of claimants whose cases are already pending in the district courts[.]"); *Ramsey*, 973 F.3d at 547 n.5 (same). Our decision thus poses only a minor inconvenience for an agency whose ALJs "hear approximately 650,000 cases" annually. *See* Reply Br. at 2; *see Cirko*, 948 F.3d at 159 (referring to the pending Appointments Clause cases as "a drop in the bucket" for the SSA).

## III.

Balancing the individual and institutional interests at play, including considering the nature of the claim presented and the characteristics of the ALJ proceedings, we decline to impose an exhaustion requirement. We therefore hold that a claimant does not forfeit an Appointments Clause challenge by failing to raise it in the course of Social Security proceedings. Accordingly, we affirm the judgments of the district courts remanding these cases for new administrative hearings before different, constitutionally appointed ALJs.

*AFFIRMED*

16

RICHARDSON, Circuit Judge, concurring in the judgment:

I agree with my good colleagues that the district court properly found that Lisa Probst and Shannon Bradshaw did not forfeit their Appointments Clause challenges by failing to raise them during their respective administrative proceedings. And while I agree with much that my colleagues have to say, my path differs. For that reason, I write separately.

Issue exhaustion is "largely [a] creature[] of statute" or regulation. *Sims v. Apfel*, 530 U.S. 103, 107–08 (2000). Thus, we must first look at the relevant statutes and regulations to determine whether such a requirement exists. But the Government never argued before this Court that a statute or regulation imposes an applicable issue-exhaustion requirement. Appellant Br. 12–17; Reply Br. 4–12. In doing so, the Government waived the most interesting question in this case: Do the Social Security regulations create—and thus provide notice of—an issue-exhaustion requirement?[1]

---

[1] Without resolving the question, a little background should help an interested reader consider whether the existing regulations require the claimant to raise any "issue" before the administrative law judge (ALJ) or whether the regulations specifically require the claimant to raise any objection to the assigned ALJ.

Several regulations discuss what "issues" are before the ALJ. If the agency denies benefits, then a claimant may request review by an ALJ. 20 C.F.R. § 404.929. The regulations provide that when requesting review, the claimant "should include . . . [t]he reasons [the claimant] disagree[s] with the previous determination or decision." § 404.933(a). The ALJ then must provide notice about "[t]he *specific issues* to be decided in [the claimant's] case." § 404.938(b) (emphasis added). If, however, the claimant "object[s] to *the issues* to be decided at the hearing, [the claimant] *must* notify the" ALJ with reasons for the objections "at the earliest possible opportunity, but no later than" five days before the hearing. § 404.939 (emphasis added). And at the hearing, the issues before the ALJ "include *all the issues* brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor," although the ALJ

17

Respecting the importance of raising an issue before the proper tribunal, I would hold the Government to their own waiver. Although interesting, I would not reach out to decide whether the regulations in fact create an issue-exhaustion requirement. The majority acknowledges and accepts the Government's waiver. *See* Majority Op. 7. But the majority then presses forward to decide—on the merits, without briefing, and in a footnote—that the agency regulations cannot be interpreted to create an issue-exhaustion requirement. *Id.* at 7, n.3; *cf. Robert A. Johnston Co. v. Southland Dairy Distrib. Co.*, 368 F.2d 993, 995 (4th Cir. 1966) (noting that discussing issues without the benefit of briefing can lead to "precipitous" and ill-considered decisions). That seems unwise, particularly when the answer is less clear than the majority's footnote lets on.

After accepting the Government's waiver, I would move to the Government's argument that even in the absence of a statute or regulation, we should impose a judicially created issue-exhaustion requirement. Appellant Br. at 20; *see also Sims*, 530 U.S. at 108; *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952). I agree with my

---

may raise and consider new issues if the claimant is notified. § 404.946(a), (b)(1). The claimant also "may raise a new issue," and this new issue "may be raised even though it arose after the request for a hearing and even though it has not been considered in an initial or reconsidered determination." § 404.946(b)(1).

Another regulation deals directly with objections to the assigned ALJ. Section 404.940 explains that if the claimant "object[s] to the administrative law judge who will conduct the hearing, [the claimant] *must* notify the administrative law judge at [her] earliest opportunity." § 404.940 (emphasis added); *see also id.* (noting that if the ALJ does not withdraw, then the claimant may present her objection to the Appeals Council). *But see* Majority Op. 7 n.3 (concluding the "language [of § 404.940] could encompass Appointment Clause challenges" but deciding the "context" limits the "language" to "allegations of bias or special interest").

colleagues that we may not.  But I reach that conclusion because the controlling opinion in *Sims* instructs that the Social Security Administration must "notify claimants of an issue exhaustion requirement" before the judiciary can impose one.  530 U.S. at 113 (O'Connor, J., concurring in part and concurring in the opinion).[2] And the Government's refusal to rely, at least in this Court, on its own regulations waives the only plausible source for providing that notice.

For these reasons, I concur in the judgment.

---

[2] *Sims* cautioned that its decision was limited to a Social Security claimant who failed to present an issue to the Appeals Council after an adverse decision from an ALJ. 530 U.S. at 110–12 (plurality); *id.* at 112–14 (O'Connor, J., concurring in part and concurring in the opinion); *see also id.* at 107 (making clear that whether "a claimant must exhaust issues before the ALJ is not before us").  But despite the potential reasons for considering issue exhaustion differently during different stages of the Social Security process, I read Justice O'Connor's controlling opinion as categorically requiring notice for issue exhaustion to apply in Social Security proceedings.  That notice may come from the regulations or administrative materials but, at least before this Court, the Government has not argued that anything provides the requisite notice.